IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

| | |
|---|---|
| BANK OF AMERICA, N.A., successor by merger to LASALLE BANK, NATIONAL ASSOCIATION,<br><br>    Plaintiff,<br><br>vs.<br><br>CORPOREX COMPANIES, LLC, WILLIAM P. BUTLER and THOMAS E. BANTA<br><br>    Defendants. | Civil Action No. 2:14-cv-00165-ART-JGW<br><br>Judge Amul R. Thapar<br><br>Magistrate J. Gregory Wehrman |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

### INTRODUCTION

Plaintiff Bank of America, N.A. (the "Bank") has brought this action against Corporex Companies LLC (a Kentucky limited liability company and hereafter  Corporex Companies") and William P. Butler and Thomas E. Banta (Kentucky citizens and hereafter "Mr. Butler" and "Mr. Banta" and, collectively with Corporex Companies, the "Defendants").  The Bank challenges transfers, of unspecified "fee real estate interests, equity interests in real estate companies, cash and other assets" to Corporex Companies by Corporex Realty & Investment LLC (a Kentucky limited liability company and hereafter "Corporex Realty").  Corporex Realty is not named as a defendant in this action.  The Bank claims that Corporex Realty owes the Bank on a certain guaranty (Doc. No. 21, Exhibit B to the First Amended Complaint and hereafter the

"Guaranty") and that it fraudulently transferred assets to Corporex Companies. The debt allegedly due under the Guaranty is the subject of other litigation in this Court (2:12-cv-00023-DLB-JGW, the "Corporex Realty Case"). The Bank does not have a judgment against Corporex Realty on the Guaranty. Corporex Realty has denied any liability to the Bank in that action and, with its affiliates, has stated defenses and counterclaims against the Bank.

The Bank alleges that Corporex Realty engaged in a "scheme" which was "aided and abetted" by Mr. Butler and Mr. Banta to transfer its assets to Corporex Companies without valuable consideration with the intent to defraud the Bank, causing Corporex Realty to be insolvent. There was no such scheme. The Bank's claims are an irresponsible, legally and factually unsupportable, and egregious attempt to damage Corporex Companies and to bully Corporex Realty and its affiliates into dismissing or compromising their defenses and claims against the Bank.

This is the third such attempt. Last year, the Bank commenced a virtually identical action against the Defendants in the United States District Court for the Western District of North Carolina. In that action, the Bank alleged that the claims were based on North Carolina and Ohio law. United States District Judge Robert J. Conrad, Jr., dismissed that case for lack of personal jurisdiction in July 2014. *Bank of America, N.A. v. Corporex Companies, LLC*, No. 3:13-CV-691-RJC, 2014 WL 3731778 (W.D. N.C. July 28, 2014). Then, on September 8, 2014, the Bank filed its original complaint in this action, making largely the same allegations it made in the North Carolina action, that Corporex Realty and Defendants had engaged in "an elaborate and brazen scheme" to defraud the Bank and seeking, among other things, punitive damages of "no less than" $100,000,000. In that complaint, although making the same basic factual allegations it made in the North Carolina action, the Bank dropped any references to North Carolina or Ohio

law and asserted, correctly, that Kentucky law applied to its claims and cited applicable Kentucky statutes. Defendants then moved to dismiss the complaint because it failed to state a claim under applicable Kentucky law. Then the Bank, realizing that it had not stated and could not state a claim under Kentucky law, opted not to respond to the motion to dismiss, but instead filed the First Amended Complaint wherein it has deleted all references to the applicable Kentucky statutes. The Bank now alleges that the transfers from Corporex Realty to Corporex Companies "implicate" real property and entities in as many as 25 different states and that the laws of 20 states apply to its claims.[1] It defines these states as the "Real Property Transfer States", all of which <u>except for Kentucky</u> have adopted either the Uniform Fraudulent Transfer Act ("UFTA") or the Uniform Fraudulent Conveyance Act. The Bank then specifically pleads the provisions of the UFTA in an attempt to avoid the consequences of the application of Kentucky law. *See,* First Amended Complaint ¶¶79 (UFTA §4(a)(1)), 95 (UFTA §4(a)(2)) and 100 (UFTA §5(a)).

The Bank fully understands the damage its allegations of fraud have caused the Defendants and Corporex Realty in the business community, tarnishing their reputations and chilling the commercial and financial transactions which are critical to the continued success of Corporex Companies and Corporex Realty. In the first two iterations of its complaint, the Bank went so far in its mission to inflict harm on Corporex Companies, Mr. Butler, and Mr. Banta as to make an outrageous claim for not less than $100,000,000 in punitive damages. The filing of these three complaints is consistent with and further evidence of the bad faith that has permeated the Bank's conduct in its dealings with Corporex Realty and its affiliates since 2010 and is the

---

[1] The fact is that no real property was transferred from Corporex Realty to Corporex Companies or, for that matter, to anyone else. Nevertheless, for purposes of this motion, one can accept as true the Bank's false allegations. They don't change the results. Kentucky law applies and the Bank has failed to state a claim under Kentucky law.

basis for their defenses and counterclaims in the other actions pending before this Court. Corporex Realty has been defending itself against the Bank's assault and pursuing its rights against the Bank for more than three and a half years.

The linchpin of the Bank's claims is its conclusory allegation that the transfers of assets to Corporex Companies left Corporex Realty insolvent. (Doc. No. 21, ¶ 1). Nonetheless, it contradicts that conclusion repeatedly by alleging instead that Corporex Realty was left "a few transfers *away from* insolvency" or "*closer* to insolvency" or "*within the zone* of insolvency." (Doc. No. 21, ¶¶ 1, 50 and 117)(emphasis added). Moreover, the Bank's specific factual allegations do not support these conclusions, but also contradict them. The Bank alleges that, as of November 2013, Corporex Realty stated that its net worth was $125 million, which is almost four times the amount of the Bank's claim of $32 million. (Doc. No. 21, ¶ 4). Moreover, the Defendants would prove, if such proof would ever become necessary, that there was no fraudulent scheme. The transfers of Corporex Realty's assets, including those to Corporex Companies, were specifically permitted by the relevant loan documents, were made in the ordinary course of business, and did not make Corporex Realty insolvent. The Defendants would prove that Corporex Realty is fully operational today, more than three years after the transactions about which the Bank complains.

However, such proof is not necessary. The Bank does not have a judgment against Corporex Realty or an unsatisfied writ of execution on the judgment. Both are required by Kentucky law for the Bank to assert the claims alleged against the Defendants in this action. Moreover, Kentucky law—as recently held by this Court—does not permit the Bank's claims against Mr. Butler and Mr. Banta since they are not the recipients of any of the transfers in issue. Accordingly, this action must be dismissed.

STATEMENT OF FACTS[2]

In 2005, LaSalle Bank, National Association ("LaSalle Bank") lent money to CPX Olympic Building II, LLC ("CPX Olympic"), an indirect subsidiary of Corporex Realty. The loan was secured by a mortgage on certain realty owned by CPX Olympic in Kentucky. In 2006, LaSalle Bank lent money to CPX Madison Place Office, LLC ("CPX Madison"), an indirect subsidiary of Corporex Realty. The loan was secured by a mortgage on certain realty owned by CPX Madison in Kentucky. In 2008, LaSalle Bank lent money to CPX Tampa Gateway OPAG, LLC ("CPX Tampa"), an indirect subsidiary of Corporex Realty. The loan was secured by a mortgage on certain realty owned by CPX Tampa in Florida. (Collectively, CPX Olympic, CPX Madison Place and CPX Tampa are referred to as the "Borrowers.")

The three loan arrangements included guarantees by Corporex Realty, including the Guaranty. Notably, LaSalle and Corporex Realty negotiated in the guaranties specific rights to transfer assets, subject to the financial covenants noted below, specifically:

> 10.  <u>Transfers, Sales, Etc.</u>  Guarantor shall not sell, lease, transfer, convey or assign any of its assets, *unless*: . . . such sale, lease, transfer, conveyance or assignment is performed in the ordinary course of its business, and will not have a material adverse effect on the business or financial condition of Guarantor or its ability to perform its obligations hereunder.

(Doc. No. 21, Guaranty §10) (emphasis added). The parties then defined the materiality threshold and expressly agreed how the value of the real estate assets was to be determined:

---

[2] The relationship and disputes between the Bank on the one hand and Corporex Realty and its affiliates on the other hand are concisely summarized by the United States District Court for the Middle District of Florida (Judge Steven D. Merryday) in two recent orders. On September 12, 2014, Judge Merryday entered an order denying the Bank's motion for summary judgment on the counterclaims of Corporex Realty affiliate CPX Tampa Gateway OPAG, LLC against the Bank. *SMA Portfolio Owner, LLC v. CPX Tampa Gateway OPAG, LLC*, No. 8:11-cv-1925-T-33EAJ, 2014 WL 4545804 (M.D. Fla Sept. 12, 2014). Those claims are fundamentally identical to the defenses Corporex Realty has raised against the Bank's claims on the Guaranty. On September 22, 2014, Judge Merryday entered an order transferring the Florida action to this Court. *SMA Portfolio Owner, LLC v. CPX Tampa Gateway OPAG, LLC*, No. 8:11-cv-1925-T-33EAJ, 2014 WL 4791997 (M.D. Fla Sept. 12, 2014).

23. <u>Financial Covenants</u>. At all times while any portion of the Loan remains outstanding, Guarantor shall maintain a Minimum Unencumbered Liquidity (as defined below) of Ten Million Dollars ($10,000,000) and a Minimum Current Value New Worth (as defined below) of Eighty-Five Million Dollars ($85,000,000). . . . "**Minimum Current Value Net Worth**" means stockholder's equity as determined in accordance with generally accepted accounting principles (except that real property assets shall be deemed to be worth their current valuation at the time of such determination as reasonably and objectively determined from time to time by Guarantor's management) from Guarantor's current value financial statements in conformity with Guarantor's historical practices as previously demonstrated to Lender.[3]

(*Id.*, §23).

LaSalle Bank was subsequently acquired by the Bank. In June 2011, following the Bank's bad faith negotiations that were intended to deprive the Borrowers of their rights to buy the loans if the Bank decided to sell them (*see* decision of Judge Merryday in *SMA Portfolio Owner, LLC v. CPX Tampa Gateway OPAG, LLC*, No. 8:11-cv-1925-T-33EAJ, 2014 WL 4545804 (M.D. Fla Sept. 12, 2014), in which he found sufficient evidence existed to go to trial on the bad faith claim), the Bank commenced the Corporex Realty Case in the United States District Court for the Southern District of Ohio, seeking to recover from Corporex Realty on its guarantees. In its response, Corporex Realty stated its defenses and counterclaims. CPX Olympic and CPX Madison then intervened in the Corporex Realty Case to assert their counterclaims against the Bank. The Ohio District Court thereafter transferred the Corporex Realty Case to this Court in January 2012.

Prior to that transfer, in August 2011, the Bank commenced foreclosure actions against CPX Madison in this Court (2:11-cv-00168-DLB-JGW) and CPX Olympic (2:11-cv-00169-DLB-JGW) and against CPX Tampa in the United States District Court for the Middle District of

---

[3] As noted above, the Bank alleges that as of November 2013, Corporex Realty states that its net worth was $125 million and that its cash was $13 million. (Doc. No. 21, ¶4). Both of these amounts well exceeded the $85 million and $10 million agreed-upon minimums set forth in the Guaranty.

14568329.1 - 6 -

Florida. CPX Madison and CPX Olympic stated their defenses and counterclaims against the Bank in the Kentucky actions. CPX Tampa filed similar defenses and counterclaims against the Bank in the Florida action.

After the commencement of the litigation, the Bank sold the CPX Olympic and CPX Tampa loans to SMA Portfolio Owner LLC ("SMA") at a discount that it did not offer to CPX Olympic or CPX Tampa. Those loans and the related guarantees of Corporex Realty were later resolved and satisfied pursuant to a settlement agreement with SMA. The counterclaims and defenses of Corporex Realty and the Borrowers against the Bank were retained. Judge Merryday then denied the Bank's motion for summary judgment directed at CPX Tampa's counterclaims against the Bank. These counterclaims are virtually identical to the counterclaims and defenses asserted against the Bank by Corporex Realty, CPX Olympic and CPX Madison in the Corporex Realty Case. Judge Merryday then transferred the Florida action to this Court. That action is now pending as case 2:14-cv-00172-ART in this Court.

## KENTUCKY'S SUBSTANTIVE LAW APPLIES TO THE BANK'S CLAIMS

The choice-of-law principles applicable to this case clearly require the application of Kentucky law. Federal courts hearing cases in diversity look to the conflict of laws rules in the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941); *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000). As this Court has noted:

> At the outset, a strong preference exists in Kentucky for applying Kentucky law. "On at least two occasions, [the Sixth Circuit has] noted this provincial tendency in Kentucky choice-of-law rules."

*Asher v. Unarco Material Handling, Inc.*, 737 F.Supp.2d 662, 667 (E.D. Ky. 2010), *quoting Wallace Hardware*, 223 F.3d at 391. *See also, Adam v. J. B. Hunt Transp.,* 130 F.3d 219, 230 (6th Cir. 1997) ("Kentucky does take the position that when a Kentucky court has jurisdiction

over the parties, `[the court's] primary responsibility is to follow its own substantive law.'"); *Johnson v. S.O.S. Transp., Inc.,* 926 F.2d 516, 519 n. 6 (6th Cir. 1991) ("Kentucky's conflict of law rules favor the application of its own law whenever it can be justified."); *Harris Corp. v. Comair, Inc.,* 712 F.2d 1069, 1071 (6th Cir. 1983) ("Kentucky courts have apparently applied Kentucky substantive law **whenever possible** … [I]t is apparent that Kentucky applies its own law unless there are overwhelming interests to the contrary.") (emphasis in original).

The Bank's claims in this case arise in tort, which, under Kentucky choice-of-law principles, are governed by the "any significant contacts" test. *Saleba v. Schrand*, 300 S.W.3d 177, 181 n. 2 (Ky. 2009) ("in tort actions, Kentucky law will apply if Kentucky has any significant contacts with the action"); *Adam*, 130 F.3d at 230. "Under this test, 'any significant contact with Kentucky [is] sufficient to allow Kentucky law to be applied.'" *Sierra v. Williamson*, Civ. No. 4:10-CV-00079-TBR, 2013 WL 3456988, * 5 (W.D. Ky. July 9, 2013), *citing Bonnlander v. Leader Nat'l Ins. Co.*, 949 S.W.2d 618, 620 (Ky. App. 1996). Kentucky has more than enough contacts with this dispute to adhere to the strong preference for Kentucky law. *Arnett v. Thompson*, 433 S.W.2d 109, 113 (Ky. 1968). First and foremost, the Bank's claims all arise from transfers from one Kentucky LLC to another Kentucky LLC. *Sierra*, 2013 WL 3456988 at * 5; *Novadx Ventures Corp. v. Gress Engineering, P.C.*, Civ. No. 12-78-GFVT, 2013 WL 794375 (E.D. Ky. March 4, 2013). Kentucky has a strong interest in applying its law to transfers among its citizens. In addition, all three of the Defendants are Kentucky residents. The Bank has not established and cannot establish that any other state's "interest is [] overwhelming enough to displace the presumption of applying Kentucky law. Thus, Kentucky law applies." *Asher*, 737 F.Supp.2d at 674.

## APPLICABLE STANDARD

To survive a motion to dismiss based on Rule 12(b)(6), a pleading must allege facts that, if accepted as true, "raise a right to relief above the speculative level" and state a claim to relief that is "plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 and 570 (2007). A pleading is facially plausible where it contains factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. citing Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). It requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. *See also GATX Corp v. Addington*, 879 F. Supp. 2d 633, 641 (E.D. KY. 2012).

Further, the pleading "must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory …. Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice …. Even under Rule 12(b)(6), a complaint containing a statement of facts that merely creates a *suspicion* of a legally cognizable right of action is insufficient." *Bishop v. Lucent Technologies*, *Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (internal quotations omitted) (emphasis in original).

In addition to the allegations in the complaint, a court may consider other materials that are referenced in and central to the complaint, public records, or otherwise appropriate for the taking of judicial notice. *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999); *GATX Corp.*, 879 F. Supp. 2d at 641.

## ARGUMENT AND APPLICABLE KENTUCKY LAW

**A.     The Bank's Attempt to Extend the Kentucky's Fraudulent Conveyance Statutes by Conjuring Common Law Theories of Liability Based Upon the Alleged Fraudulent Transfers Should be Rejected.  All Counts of the First Amended Complaint Should Be Dismissed Because The Bank Does Not State a Claim Against Defendants.**

While the First Amended Complaint purports to seek relief on various theories, in reality it is simply a fraudulent conveyance claim.  All Counts of the First Amended Complaint are based on the transfers from Corporex Realty to Corporex Companies and at least three incorrect assumptions: first, that the Bank will obtain a judgment against Corporex Realty; second, that any such judgment will not be satisfied; and third, that because of the transfers the Bank can look to the Defendants' assets to pay the judgment.  Kentucky law is clear that an alleged creditor cannot look to recover a debt from a transferee of the alleged debtor under any theory until the alleged creditor has proved that the debt is actually owed by the debtor (that is, the creditor has obtained a judgment against the debtor) and that the alleged creditor cannot collect the debt from the debtor and its assets (that is, the creditor's execution efforts have been unsuccessful).

**1.     The Bank Does Not Have a Judgment against Corporex Realty.**

Under Kentucky law, a plaintiff must have a judgment against the transferor of assets in order to pursue a fraudulent conveyance claim against the transferee.[4]  *Shepherd v. Haymond*, 291 Ky. 780, 165 S.W. 2d 812 (1942); *see also*, Douglas C. Michael, *The Past and Future of*

---

[4]     Moreover, under Kentucky law, the sole remedy for fraudulent conveyances is to void the transfers in question. The money damages that the Bank seeks in this action are inappropriate. "Simply put, it is inappropriate to read a remedy into a statute that is not there, especially given that in the 108 year history of KRS 378.010 not a single recorded Kentucky case allows for recovery of a money judgment against a beneficiary of a fraudulent transfer." *CNH Capital America LLC v. Hunt Tractor, Inc.,* 568 Fed. Appx. 461, 472 (6th Cir. June 13, 2014). The appropriate remedy for fraudulent conveyance is that the conveyance is nullified and the property returned. *Id*. at 470, (citing *Princesse D'Isenbourg et Cie, Ltd v. Kinder Caviar, Inc*., No. 3:12-cv-4-DCR, 2013 WL 147841, at *6 (E.D. Ky. Jan 14, 2013) and *GATX Corp.,* 879 F. Supp. 2d at 642.

*Kentucky's Fraudulent Transfer and Preference Law,* 86 Ky. L.J. 937 (1997-98).  The reason for this requirement is obvious.  A plaintiff cannot recover from the assets transferred to the transferee when the plaintiff does not have a judgment against and is not entitled to recover from the transferor.  *See*, Arloe W. Mayne, Comment*, Creditors' Bills and Actions to Set Aside Fraudulent Conveyances—Prerequisites to Suit*, 39 Ky. L.J. 103 (1950-51) ("Is it equitable to permit a creditor who has not even established a valid claim against his alleged debtor to file a petition asking that a conveyance to a third party purchaser be set aside as fraudulent and thus subject the purchaser to the expense and trouble of defending the suit without even a bond to indemnify the purchaser in the event the charge is wrongfully made"?)

> **2.  The Bank Does Not Have an Unsatisfied Writ of Execution on a Judgment Against Corporex Realty.**

Under Kentucky law, a plaintiff's attempts to satisfy its judgment against the transferor must be unsuccessful in order for the plaintiff to pursue a fraudulent conveyance claim against the transferee.  *Shepherd v. Haymond*, *supra*; *see also, Universal C.I.T. Credit Corporation v. Bell High Coal Corporation*, 454 S.W. 2d 706 (Ky. 1970).[5]  The reason for this requirement is also obvious.  A plaintiff should not be able to recover from a transferee if the plaintiff can satisfy the judgment by executing on the assets of the transferor.

> **B.  Each of the Counts of the First Amended Complaint fails to State a Claim for Additional Reasons.**
>
> **1.  Counts I and II of the First Amended Complaint Should be Dismissed Because They Fail to State a Claim For Successor Liability.**

The Bank attempts to avoid the deficiencies in its alleged fraudulent conveyance claims by pleading them as successor liability claims.  However, the principle which requires an unsatisfied execution for a fraudulent claim requires, or should require, at least that a creditor

---

[5] Kentucky has eliminated this requirement where the transferred assets are real property.  KRS §378.030.

14568329.1 - 11 -

cannot attack the debtor's transferee as a successor if the debtor is still operating and has assets in Kentucky with which to satisfy the debt. *See*, *e.g.*, *American Railway Express Co. v. Commonwealth*, 190 Ky. 636, 228 S.W. 433 (1920) (the "seminal" Kentucky case on successor liability, a writ of execution on judgment against primary party returned unsatisfied prior to averring successor liability); *In re Wright Enterprises,* 77 Fed. Appx 356 (6th Cir. 2003)(primary party was liquidated and dissolved); and *Crittenden Builders Supply Co. v. Grant County Concrete Co., Inc.,* 2006 WL 2520080 (Ky App. 2006) (primary party went out of business).

Moreover, Kentucky law recognizes separate corporate interests, including subsidiaries and affiliates, and they must be recognized and treated as such. *Hazard Coal Corporation v. Kentucky West Virginia Gas Company L.L.C.* 311 F.3d 733 (6th Cir. 2002). Kentucky courts have recognized narrow exceptions and found successor liability (*see, Excel Energy, Inc. v. Cannelton Sales Co.*, 337 Fed. Appx. 480 (6th Cir. 2009)) but none have been or should be applied unless the primary debtor has ceased operations, dissolved, or filed bankruptcy. The Bank has not alleged, nor can it, that Corporex Realty has ceased operations, dissolved, or filed bankruptcy. Thus, the First Amended Complaint does not state a claim for successor liability.

**2. Count II of the First Amended Complaint Should be Dismissed Because the Bank has not Stated a Claim for Fraud by Omission**

The Bank alleges that the Defendants have committed fraud by omission. Under Kentucky law, there are four elements to the tort of fraud by omission: (1) the defendants had a duty to disclose the fact at issue, (2) the defendants failed to disclose the fact, (3) the failure to disclose the fact induced the plaintiff to act, and (4) the plaintiff suffered damages as a consequence. *GATX Corp v. Addington,* 879 F.Supp. 2d at 646, *citing Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W. 3d 636, 641 (Ky. Ct. App. 2003).

The Bank alleges in conclusory fashion that Corporex Companies had a duty to disclose the transfers to the Bank because Corporex Companies is the successor to Corporex Realty. As discussed above, the Bank has not stated a claim for successor liability. Corporex Companies certainly has no independent duty to the Bank. Corporex Companies is not a party to any contracts with the Bank nor does it have any fiduciary or statutory duties to the Bank. "Without having some pre-existing duty, a party cannot be liable for fraud by omission simply because he condoned the acts of another...." *Id.* at 647. *See also Bank of America., N.A. v. Corporex Realty & Inv., LLC*, 875 F. Supp.2d 689, 704-6 (E.D. Ky. 2012).

In addition, the Bank has not sufficiently pleaded that it has acted upon the alleged nondisclosure of the transfers and suffered actual damages therefrom. The Bank attempts to plead these elements by stating that it did not take immediate steps to unwind the transfers or otherwise protect its interest, apparently meaning that it did not file its frivolous lawsuit sooner and somehow has been damaged because of that. Such allegations do not satisfy the reliance and damages elements of fraud by omission.

### 3. Counts III, IV, V and VI of the First Amended Complaint do not State Claims for Fraudulent Conveyance Under Kentucky Law

As discussed above, Kentucky law requires that a plaintiff must have a judgment against the transferor and an unsatisfied writ of execution on the judgment to pursue a fraudulent conveyance claim. The Bank ignores these requirements and instead attempts to plead fraudulent conveyance claims under the UFTA in Counts III, IV, and V of the First Amended Complaint. The UFTA has not been adopted in Kentucky and is not applicable to the claims before this Court. Count VI of the First Amended Complaint contains the language of the Kentucky fraudulent conveyance statute, but fails to state a claim for the reasons set forth in section "A" above. Each of these Counts should be dismissed.

4. **Counts VII, VII and IX of the First Amended Complaint Should Be Dismissed as to Mr. Butler and Mr. Banta Because They were Not Transferees**

While the First Amended Complaint purports to seek relief on various theories, in reality it is simply a fraudulent conveyance claim. As such, it is actionable only against the alleged transferor (Corporex Realty) or the transferee (Corporex Companies) and not against the individuals (Mr. Butler and Mr. Banta) since they were neither transferors nor transferees. *GATX Corp.,* 879 F. Supp. 2d. at 642-643 ("Regardless of the remedy sought, a direct liability fraudulent conveyance claim is only actionable against the transferor or transferee.") Asserting claims against Mr. Butler and Mr. Banta for "fraud" and "aiding and abetting fraud and fraudulent transfers" and "breach of fiduciary duty" and "aiding and abetting breach of fiduciary duty," all for allegedly making Corporex Realty fraudulently transfer its assets to Corporex Companies, is an attempt to circumvent Kentucky law which permits fraudulent conveyance claims only against transferors and transferees. Thus, in *GATX Corp.,* this Court specifically held that no cause of action against non-transferees for aiding and abetting fraudulent conveyances exists in Kentucky. *Id.* Moreover, Mr. Butler and Mr. Banta cannot be liable for aiding and abetting a tort they could not commit. *See, CNH Capital America LLC v. Hunt Tractor, Inc.,* 568 Fed. Appx. 461, 473 (6th Cir. June 13, 2014) ("[The individual] cannot be liable for fraudulent conveyance because he was neither the transferee nor the transferor. [The individual] cannot be liable for conspiring to perform a tort he could not commit as a matter of law.")

5. **Count VII of the First Amended Complaint Should be Dismissed Because Mr. Butler and Mr. Banta Cannot Be Liable for Aiding and Abetting Fraud by Omission**

Mr. Butler and Mr. Banta also cannot be liable for aiding and abetting fraud by omission since they cannot be liable for fraud by omission. Because the Bank's fraud by omission claim

fails as a matter of law (*supra* at §B.2), Defendants cannot be liable for aiding and abetting that claim. *CNH Capital America LLC v. Hunt Tractor, Inc., supra* (a defendant cannot be liable for a derivative claim if it cannot be liable on the underlying tort). The Bank's aiding and abetting claim against Mr. Butler and Mr. Banta must also be dismissed because Kentucky law does not recognize a claim for aiding and abetting a fraudulent conveyance against a non-transferee. *GATX Corp.*, 879 F. Supp. 2d at 643-45.

### 6. Count VIII of the First Amended Complaint Should Be Dismissed Because Mr. Butler and Mr. Banta Have No Fiduciary Duty to the Bank

The Bank alleges in conclusory fashion that Mr. Butler and Mr. Banta, as officers and directors of Corporex Realty, allegedly "an insolvent business entity and/or an entity that was operating within the zone of insolvency," owed a fiduciary duty to the Bank and breached that duty by causing Corporex Realty to transfer assets to Corporex Companies. As with the Bank's fraud claim, the Bank does not identify the source of any such duty. Indeed, instead of providing for officer and director liability to the corporation's *creditors*, Kentucky law provides only that a director may be liable *to the corporation* for improper transfers of assets. Specifically, KRS §271B.8-330(1) states:

> A director who votes for or who assents to a distribution made in violation of KRS §271B.6-400 or the articles of incorporation shall be personally liable to the **corporation** for the amount of the distribution that exceeds what could have been distributed without violating KRS §271B.6-400 or the articles of incorporation if it is established that he did not perform his duties in compliance with KRS §271B.8-300. In any proceeding commenced under this section, a director shall have all of the defenses ordinarily available to a director. KRS §271B.8-330(1) (emphasis supplied).

Thus, Mr. Butler and Mr. Banta owed no duties to the Bank.

Moreover, this Court held in the Corporex Realty Case that no fiduciary duty existed between the Bank and the Borrowers and, for that reason, dismissed a breach of fiduciary claim

asserted by the Borrowers.  *Bank of America., N.A. v. Corporex Realty & Inv., LLC*, 875 F. Supp.2d 689, 704-6 (E.D. Ky. 2012).   The Court's lengthy summary of Kentucky law in that case is equally applicable here:

> A fiduciary duty is defined as "a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 485 (Ky. 1991) (quoting *Security Trust Co. v. Wilson*, 210 S.W.2d 336 (Ky. 1948)); *see also Groob v. KeyBank*, 843 N.E.2d 1170, 1173 (Ohio 2006) (quoting *In re Termination of Emp. of Pratt*, 321 N.E.2d 603, 609 (Ohio 1974) (A fiduciary duty is defined as a relationship "in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.")). As a general rule, banks do not owe a fiduciary duty to their customers or debtors. *Steelvest, Inc.*, 807 S.W.2d at 485; *Groob*, 843 N.E.2d at 1173. N.9 A fiduciary duty is "the highest order of duty imposed by law." *In re Sallee v. Fort Knox Nat'l Bank, N.A.*, 286 F.3d 878, 891 (6th Cir. 2002). "In an arms-length commercial transaction, where each party is assumed to be protecting its own interest, no such duty arises." *Snow Pallet, Inc. v. Monticello Banking Co.*, --- S.W.3d ----, 2012 WL 1370878, at *4 (Ky. App. Apr. 20, 2012) (citing *In re Sallee*, 286 F.3d at 894).

875 F.Supp.2d *at* 704-5.  Here, where no relationship has been alleged to exist between any of the Defendants and the Bank that would give rise to a fiduciary duty, the Court should dismiss the Bank's breach of fiduciary duty claims.

> **7.  Count IX of the First Amended Complaint Should be Dismissed Because Mr. Butler and Mr. Banta Cannot Be Liable for Aiding and Abetting Breach of Fiduciary Duty**

Mr. Butler and Mr. Banta cannot be liable for aiding and abetting a breach of fiduciary duty as they cannot be liable for a tort they could not commit. *See, CNH Capital America LLC v. Hunt Tractor, Inc., supra*.

In addition, the Bank has not pleaded facts supporting its conclusory allegation that Mr. Butler and Mr. Banta aided and abetted a breach of fiduciary duty.  The Bank must establish that Corporex Realty owed a fiduciary duty to the Bank, that Mr. Butler and Mr. Banta gave "substantial assistance or encouragement" to Corporex Realty's breach, and that they knew that

Corporex Realty's conduct breached a fiduciary duty. *Miles Farm Supply, LLC v. Helena Chemical Co.*, 595 F. 3d 663, 666 (6th Cir. 2010). The Bank has failed to allege facts that support any of its conclusory allegations.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Complaint be dismissed.

Respectfully submitted,

/s/ Earl K. Messer
Earl K. Messer (*pro hac vice*)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH  45202-3957
Phone:  (513) 357-9652
Fax:  (513) 381-0203
Email:  messer@taftlaw.com

Robert B. Craig (15590)
Taft Stettinius & Hollister LLP
1717 Dixie Highway, Suite 910
Covington, KY  41011
Phone:  (859) 547-4300
Fax:  (513) 381-6613
Email:  craigr@taftlaw.com

Robert L. Rocke (*pro hac vice*)
Raul Valles, Jr. (*pro hac vice*)
ROCKE, McLEAN & SBAR, P.A.
2309 S. MacDill Avenue
Tampa, FL  33629
Phone: 813-769-5600
Fax:    813-769-5601
Email:  rrocke@rmslegal.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2014 this document was served upon counsel of record through this Court's CM/ECF system.

/s/ Earl K. Messer