## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY

Bank of America, N.A., successor by merger
to LASALLE BANK, NATIONAL
ASSOCIATION,

Case No.:  2:14-cv-00165-ART-JGW

Judge Amul R. Thapar

                    Plaintiff,

Mag. Judge J. Gregory Wehrman

        v.

CORPOREX COMPANIES, LLC,
WILLIAM P. BUTLER and THOMAS E.
BANTA,

                    Defendants.

## RESPONSE OF BANK OF AMERICA, N.A.
## IN OPPOSITION TO MOTION TO DISMISS

Plaintiff, Bank of America, N.A., successor by merger to LaSalle Bank, N.A., ("Plaintiff"

or "Bank of America") files the within response in Opposition to Motion to Dismiss (the

"Motion"), and in support thereof alleges as follows:

## INTRODUCTION

Defendants have asked this Court to dismiss Bank of America's First Amended

Complaint.  In support of this request, Defendants argue that, as a factual matter, Corporex

Realty & Investment, LLC ("Corporex Realty") is not insolvent, is not out of business and has

sufficient funds to repay BANA on its $32 million debt.  In fact, instead of addressing the

allegations of the First Amended Complaint, Defendants inappropriately devote numerous pages

of their brief to disputing the facts as alleged in the First Amended Complaint.  However, these

statements are beyond the First Amended Complaint and may not be considered on a motion to

dismiss.  In addition to being improper on a motion to dismiss, they are also directly controverted

by hundreds of pages of documents in BANA's possession which detail the fraudulent transfers

1

and planned insolvency of Corporex Realty. This Court should disregard Defendants' self-serving statements of so-called "fact" in their entirety and focus instead on the allegations of the First Amended Complaint.

Turning to the actual merits of the Motion, contrary to Defendants' claims, this case is about much more than a simple fraudulent transfer. This case is about a calculated scheme to defraud Bank of America from collecting on a $30 million debt. Soon after Bank of America filed suit for breach of guarantees on over $60 million in loan obligations, Defendants orchestrated a plan to cause the transfer of all of the assets of Corporex Realty to Corporex Companies, LLC ("Corporex Companies"). The purpose of these transactions was to render a half a billion dollar entity judgment-proof so that, when Bank of America finally obtains its judgment against Corporex Realty, there will be no assets left to satisfy the debt.

As detailed in the First Amended Complaint, numerous legal theories are available to protect creditors from fraud and misconduct by debtors who are attempting to avoid paying their debts. The facts of this case give rise to multiple claims sounding in successor liability, fraud in the omission, breach of fiduciary duty, aiding and abetting liability *and* fraudulent transfer. Plaintiff has stated valid claims under each theory. Accordingly, the Motion should be denied in its entirety.

## FACTUAL BACKGROUND

Corporex Realty and Corporex Companies are part of the Corporex real estate empire. At one point in time, Corporex Realty was the primary operating company and/or investment vehicle in the empire. (First Amended Complaint, ¶ 15). Corporex Realty developed over 18 million square feet of commercial real estate including warehouses, flex industrial, Class A office, sports clubs and full and select service hotels. (*Id.*) At one point, Corporex Realty

2

claimed to be one of the leading privately held, vertically-integrated owner/operators of commercial real estate in the country. (*Id.*). It had a national footprint of ownership and development of real estate in twenty states. (*Id.*).

In connection with Corporex's development of certain real estate projects in Kentucky and Florida, in 2005-2008, Corporex Realty guaranteed three loans originally made by Plaintiff to Corporex Realty's affiliates. (*Id.,* ¶¶ 20-22). In connection with those Guaranties,[1] Corporex Realty agreed to certain restrictions on transfers of its assets. (*Id.*, ¶¶ 23-24). If assets were transferred to any other entity owned by its primary owner and principal, Defendant William Butler, the transferee was expressly required to become a guarantor. (*Id.*, ¶ 24).

As a result of certain defaults under the various loan documents between Plaintiff, Corporex Realty, and its affiliates, in June of 2011, Plaintiff commenced litigation against Corporex Realty seeking to collect the balance due under the Guaranties. (*Id.* ¶ 27). Plaintiff similarly filed suit against Corporex Realty's affiliates for foreclosure of the real estate projects securing the loans. (*Id.* ¶ 28). As of September 2, 2014, over $30 million remains due and owing to Plaintiff from Corporex Realty. (*Id.* ¶¶ 29-30). The litigation between the parties is ongoing. (*See, e.g.* E.D.K.Y. Case No. 2:11-cv-168; 2:11-cv-169, 14-cv-172; M.D.Fl. Case No. 11-cv-1925; First Amended Complaint, ¶ 28).

During the course of the litigation, Plaintiff was shocked to discover that, shortly after the filing of the litigation, Corporex Realty and Corporex Companies, through their principals William Butler and Thomas Banta, were perpetrating an elaborate scheme to render Corporex Realty judgment proof in the event that Plaintiff was successful in obtaining a judgment against it on the Guaranties. Specifically, Corporex Realty sold, transferred and conveyed its assets to

---

[1]    Defined terms used in this response shall have the meaning set forth in Plaintiff's First Amended Complaint.

Corporex Companies who, in turn, assumed many – if not all – of Corporex Realty's guaranty obligations to its other lenders *except* for the debts to Plaintiff.

Because the transfer of assets would trigger a string of defaults under Corporex Realty's lending relationships with its other lenders, Defendants negotiated at least ten (perhaps more) loan modification agreements with at least five (perhaps more) lenders to address the transfers and impending insolvency of Corporex Realty.  (*Id.*, ¶¶ 38-49).  As part of the modifications, Corporex Realty *admitted* in writing to its lenders was no longer solvent or would soon be insolvent.  (*Id.*, Ex. E, F §3.3; Ex. G, H, § 2.6; Ex. I, § 2.9; Ex. J, §9).  Examples of those modification agreements are attached to the First Amended Complaint.  (*Id.*, Exs. D – J).  The asset transfers, and the resulting insolvency, or at the very least, impending insolvency, of Corporex Realty are clearly set forth in the terms of those documents.  For example, the agreements include some combination of the following provisions:

- **Express acknowledgement of transfers**.  (First Amended Complaint, Ex. D; Ex. E, §§ 3.1, 3.2; F, §§ 3.1, 3.2);

- **Removal of Corporex Realty as a guarantor from original loan documents; or if Corporex Realty was not removed as a guarantor, Corporex Companies was added as an additional guarantor** (*Id.*, Exs. D-J);

- **Minimum net worth and liquidity covenants of Corporex Realty were deleted entirely**.  (*Id.* Ex. E, Ex. F, § 3.2) ("Each and every section, term or provision of the Guaranty … (collectively, the "CRIC Financial Covenants") … is hereby deleted in its entirety, with respect to and as such terms and provisions relate to CRIC."); *see also* Ex. G § 2.25; H, § 2.25; Ex. I, § 2.8; *see also*, Ex. J, § 8) ("Each and every section, term or provision of the Loan Agreement, the CRI [Corporex Realty] guaranty and/or any of the other Loan documents requiring CRI to maintain a minimum level of Liquid Assets…and/or a minimum Current Value Net Worth… is hereby deleted in its entirety….");

- **Lenders waived the right to declare an Event of Default as a result of Corporex Realty's violation of minimum net worth or liquidity covenants**.  (*Id.* Ex. E, Ex. F, § 3.2) ("Further, Lender hereby expressly waives any right it may now have or may have had to declare an Event of Default for (a) an alleged failure of CRIC to be in compliance with the CRIC Financial Covenants…"); *see also* Ex. G, H, § 2.25; Ex. I, § 2.8; *see also*, Ex. J, § 8) ("Each and every section,

term or provision of the Loan Agreement, the CRI [Corporex Realty] guaranty and/or any of the other Loan documents … which provide(s) that failure to maintain such minimum Liquid Assets or minimum Current Value Net Worth is or may have any time been an Event of Default under the Note, the Loan Agreement, or any of the other Loan Documents, is hereby deleted in its entirety….");

- **Corporex Companies (in place of Corporex Realty) was required to maintain minimum net worth and liquidity requirements instead**. (*Id.*, Ex. E, §§ 2.22, 2.23; Ex. F, §§2.23, 2.24; Ex. G, H, I, § 2.17); and

- **Events of default related to Corporex Realty's insolvency or bankruptcy filing were deleted entirely**. (*Id.*, Ex. E, F §3.3) ("Insolvency Default. Each and every section, term and provision of the Loan Agreement, Guaranty, and any of the other Loan Documents, pertaining to the filing of voluntary or involuntary bankruptcy and/or insolvency proceedings with respect to CRIC…are hereby deleted in their entirety as they pertain and relate to CRIC…"); *see also* Ex. G, H, § 2.6; Ex. I, § 2.9; Ex. J, §9 ("CRI Bankruptcy/Insolvency. Each and every section, term and provision… pertaining to the filing of a voluntary or involuntary bankruptcy and/or insolvency proceedings with respect to CRI, including, but not limited to, the right of Lender to declare an Event of Default under Section 9.01(n) of the Loan Agreement…are each hereby deleted in their entirety…").

Each and every one of these documents bears the signature of some combination of the Defendants – including Defendants Butler and Banta.  Most were signed by both Corporex Realty and/or Corporex Companies, and each one was signed by Mr. Butler and/or Mr. Banta, either in their individual capacities or in their capacities as officers or directors.  (First Amended Complaint, Exs. D-J).

Now that the scheme is complete, Corporex Realty is no longer referred to on the Corporex website and in other public announcements as the main operating entity and/or investment vehicle in the Corporex real estate empire.  (*Id.*, ¶ 17).  Rather, Corporex Companies now boasts having a long history of developing, acquiring, owning and operating real estate assets in twenty-five states.  (*Id.*).

## STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed on the basis of "failure to state a claim upon which relief can be granted." Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 555 (2007) (citations omitted). The United States Supreme Court has interpreted the pleading standard set forth in Rule 8(a) as requiring that a complaint include enough facts for the claim to be "plausible on its face" and thereby "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). The plausibility requirement is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility" that a defendant is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombley*, 550 U.S. at 556).

Because a Rule 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, a district court "must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 475 (6th Cir. 2007) (citations omitted). Accordingly, "Rule 12(b)(6) does not countenance...dismissals based on a judge's disbelief of a complaint's factual allegations." *Twombley*, 550 U.S. at 555 (citations omitted). A claim may therefore survive a motion to dismiss "even if it appears that a recovery is very remote and unlikely." *Id.* (citations omitted).

## <u>ARGUMENT</u>

## I.   BANK OF AMERICA HAS STATED A CLAIM FOR SUCCESSOR LIABILITY AGAINST CORPOREX COMPANIES.

In Count I of the First Amended Complaint, Bank of America seeks a declaration that Corporex Companies is the legal successor to Corporex Realty. (First Amended Complaint, ¶¶

58-65).   The First Amended Complaint sets forth numerous grounds on which this claim should proceed.

Kentucky recognizes four (4) theories of successor liability:  (1) where the purchaser expressly or impliedly agrees to assume the debts and liabilities of the seller; (2) where the transaction amounts to a consolidation or merger of the seller and purchaser; (3) where the purchasing corporation is a mere continuation of the selling corporation; or (4) where the transaction is entered into fraudulently in order to escape liability for such debts.  *See e.g. American Railway Express Co. v. Commonwealth*, 190 Ky. 636, 228 S.W. 433 (1920); *Conn v. Fales Div. of Mathewson Corp.*, 835 F.2d 145, 146 (6th Cir. 1987).

In Kentucky, a determination of the continuity of a corporation after a sale depends on examining the sale agreement to determine continuity of shareholders or management. *Pearson ex rel. Trent v. National Feeding Systems, Inc.,* 90 S.W.3d 46, 51 (Ky. 2002).  Other factors to be considered by courts in evaluating the "mere continuation" theory include:  (1) continuity of shareholders and ownership, management, personnel, physical location and business operations, (2) whether sufficient consideration was given, particularly whether stock was given in exchange, (3) whether the predecessor ceased business operations and was dissolved shortly after the new company was formed, (4) whether the successor paid any outstanding debts on behalf of the previous company in order to continue business without interruption, (5) the buyer's intent or purpose when the new company was formed, and (6) whether the successor held itself out to the public as a continuation of the previous company.  *See e.g. Dixstar v. Gentec Equipment*, No. Civ. A. 3:02CV-45-H, 2004 WL 3362501, * 4 (W.D. Ky. Feb. 11, 2004).

A list of factors, including those concerning the dissolution of the predecessor company and the uninterrupted continuation of activities by the successor, are also considered in

evaluating the "de facto" merger exception. *Id.* at *4. All of the elements need not be present for the mere continuation exception to apply. Courts must balance the factors. *Id.* The "de facto" merger and continuation exceptions are frequently treated as one in the same. *Id.* at *n8.

Defendants do not dispute that Bank of America has alleged facts sufficient to support a claim for successor liability. As to the continuation and *de facto* merger theories, the Complaint alleges, *inter alia*, that (1) Corporex Companies has usurped the business role of Corporex Realty and is now the primary operating and/or investment vehicle in entity in which Corporex empire operates, and (2) immediately before and after the transfers, Corporex Companies had the same ownership, management, physical location and business operations of Corporex Realty. (First Amended Complaint, ¶¶ 61). As to the "fraud" exception, Plaintiff has alleged that the transfers were undertaken with fraudulent intent to defeat the claims of Bank of America as a creditor of Corporex Realty. (*Id.* at ¶ 50, 61). Finally, Plaintiff alleges that Corporex Companies expressly or impliedly agreed to assume the debts of Corporex Realty. (*Id.* at ¶ 61).

In a tacit admission that Plaintiff has properly stated a claim for successor liability, Defendants argue that Kentucky law "***should***" impose a new requirement and hold that a Plaintiff should not be permitted to attack the debtor's transferee if the debtor is still operating and has assets to satisfy the debt. (Motion, p. 11). Instead of citing to actual legal support for their proposition, Defendants refer to a few cases where, under the particular facts of those cases, the plaintiff had obtained an unsatisfied writ of execution or the transferor was liquidated and dissolved. However, nothing in those cases can be read as supporting such a rule as a condition to stating a claim for successor liability, and Plaintiff is not aware of any reported Kentucky decision that imposes such a requirement.

In fact, Defendants' position is flatly contradicted by Kentucky case law.  Whether the predecessor ceased business operations and was dissolved is but **one of many factors** Kentucky courts consider in applying the continuation theory of successor liability.  *Dixstar,* 2004 WL 3362501 at *4.  If such a requirement was a condition precedent to a claim for successor liability, it would not be one of many factors on a non-exclusive list.

Indeed, in the seminal case of *American Railway Express Co. v. Commonwealth*, which is relied upon by Defendants, the Court of Appeals considered this very argument and held a successor had liability even though the selling company was still in existence and still retained assets in other states.  228 S.W. 433, 435-436, 440 (Ky. 1920).  The Court of Appeals explained in pertinent part thereto:

> it is true in the cases referred to it appeared that the purchasing corporation had bought all the assets and property of the selling corporation, while in this case it appears that the selling corporation has some property in another state; *but we do not regard this circumstance as sufficient to defeat the wholesome principle* running through these cases that the rights of creditors are superior to the rights of stockholders, and a corporation will not be allowed to defeat it's just obligation by sale or transfer or property for no other consideration than stocks or bonds in the purchasing corporation.

228 S.W. at 440 (emphasis added).  While it is true that the other property was located out of state, the Court of Appeals did not impose any requirement that the transferor entity must sell all of its assets and be out of business as condition to imposing successor liability.  *Id.* at 440 (citing favorably to *Luedecke v. Des Moines Cabinet Co.*, 118 N.W. 456 (Iowa 1908), which held that a transfer of assets may amount to a de facto merger "although the corporate existence of the transfererr [sic] corporation continues"); *See also, Id.* at 439-440 (citing favorably cases in which there was no judgment against transferor and/or judgment was available against transferor and transferee contemporaneously).

Even if Kentucky law supported the rule advanced by Defendants (which it does not), Plaintiff has alleged sufficient facts to satisfy it.  The First Amended Complaint alleges that as a result of the unlawful transactions between Corporex Companies and Corporex Realty: (1) Corporex Companies has usurped Corporex Realty as the primary operating company in the Corporex empire, (2) that the effect of the transfers is to make it difficult or impossible for Plaintiff to collect on its debt owed by Corporex Realty, (3) that Corporex Realty is unable to pay its $32 million debt to Plaintiff, (4) the effect of the transactions is to render Corporex Realty a "shell" and (5) that the transfer constitutes in essence a "winding up" or "dissolution" of Corporex Realty.  (First Amended Complaint, ¶¶ 50, 61, 119).  Accepting all of these allegations as true, Bank of America has pled sufficient facts to satisfy any such requirements.

## II.    BANK OF AMERICA HAS STATED A CLAIM FOR FRAUD BY OMISSION AGAINST CORPOREX COMPANIES AS THE LEGAL SUCCESSOR TO CORPOREX REALTY.

A claim for fraud by omission is supported by four elements:  (1) a duty to disclose the fact at issue; (2) a failure to disclose the fact; (3) which induced the plaintiff to act or refrain from acting, and (4) damages.  *Giddings & Lewis, Inc. v. Industrial Risk Insurers*, 348 S.W.3d 729 (Ky. 2011); *Pan Oil, LLC v. United American Energy,* LLC, Nos. 2011-CA-00744-MR, 2011-CA-001120, 2012 WL 5274652, (Ky. Ct. App. Oct. 26, 2012); *GATX Corp. v. Addington*, 879 F. Supp.2d 633, 646 (E.D. Ky. 2012).

With respect to the element of "duty", Kentucky recognizes a duty to disclose in four circumstances:  (1) a confidential or fiduciary relationship; (2) a duty provided by statute; (3) when a defendant has partially disclosed material facts to the plaintiff but created the impression of full disclosure; and (4) where one party to a contract has superior knowledge and is relied upon to disclose the same.  *Giddings*, 348 S.W. at 747-748 *citing Rivermont Inn, Inc. v. Bass*

*Hotels Resorts, Inc.*, 113 S.W.3d 636 (Ky. App. 2003).  The last two circumstances are present here.

Defendants assert that Bank of America's claim for fraud by omission fails because Corporex Companies owes no fiduciary duties to Bank of America. (Motion, p. 13).  Defendants misconstrue the basis for Plaintiff's claim for fraud by omission.  The claim for fraud by omission is not premised on a fiduciary duty between Corporex Companies and Plaintiff.  Rather, Plaintiff's claim is premised on the fact Corporex Companies is the legal successor to Corporex Realty, as alleged in Count I of the First Amended Complaint.  As the legal successor, Corporex Companies may be charged with all of Corporex Realty's liabilities.  (First Amended Complaint, ¶¶ 64-65).  It is Corporex Realty that, in turn, owed Bank of America a duty of disclosure with respect to the transfers because (1) it is a party to a contract with Bank of America and had superior knowledge of the facts (*i.e.* the transfers of its assets) and was relied upon by Bank of America to disclose the same and (2) it partially disclosed facts relating to its assets but created the impression of full disclosure.  (*Id.*, ¶¶ 19-25, 71-77).

Corporex Realty promised Bank of America that (1) it would not sell, transfer or convey or assign its assets; (2) if assets were transferred to an entity in which Butler had an ownership interest of 51% or more, it would notify Plaintiff of the transfers and add the transferee as guarantor (as it did with its other lenders); and (3) that it would maintain certain liquidity and net worth covenants.  (*Id.*, Exs. A-C § 10).

These contractual promises gave rise to a duty under Kentucky law to disclose the transfers to Bank of America.  Corporex Realty had superior knowledge of the transfers, and Bank of America relied upon Corporex Realty's duty to disclose transfers of its assets.  Corporex Realty was the guarantor of over $50 million in loan obligations to Bank of America.  (*Id.*, Exs.

11

A-C). Its financial well-being was of critical importance to Bank of America. The systemic dissipation of assets and subsequent insolvency of Corporex Realty was certainly something Bank of America reasonably expected would be disclosed. In addition, as required under the Guaranties, Corporex Realty regularly provided annual financial statements to Bank of America relating to its assets. (*Id.,* §9). These statements created the impression of full disclosure, which later turned out to be untrue. Plaintiff has properly pled the element of duty under the "superior knowledge" and the "partial disclosure" standards.

Defendants also claim that Plaintiff has not sufficiently pled the elements of reliance or damages. These arguments also fail. Reliance on a fraudulent omission is satisfied where the plaintiff either acts or *fails to act* as a result of the omission. *Pan Oil*, 2012 WL 5274652 at *27. The purpose of the covenants and financial reporting requirements in the Guaranties was to protect Bank of America from dissipation of the very assets that are at issue in this case. Had Defendants disclosed the transfers to Bank of America, Bank of America would have acted promptly to protect itself. Among other things, Bank of America would have filed this action sooner, and sought injunctive relief to stop the transfers before they were completed and/or stop transfers which had not yet occurred. (First Amended Complaint, ¶ 76).

As a result of the time that passed since the transfers took place and the filing of this suit, additional transfers of Corporex Realty's assets are likely to have been made to third-parties who are beyond the reach of the fraudulent transfer laws. *See e.g.* Section 8 of the UFTA (protecting good faith transferees for value). Had the transfers been disclosed, Plaintiff could have stopped these subsequent transfers. Moreover, as a result of the fraud, Bank of America has incurred substantial legal expense in pursuing an insolvent entity and in prosecuting this action. (First Amended Complaint, ¶ 77). The full extent of damages will be revealed in discovery. Bank of

America has satisfied the elements of reliance and damages in connection with its claim for fraud by omission.

### III.   BANK OF AMERICA HAS STATED A CLAIM FOR BREACH OF FIDUCIARY DUTY AND AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AGAINST BUTLER AND BANTA.

Although officers and directors generally owe fiduciary duties to their shareholders only, the law is nearly uniform throughout the country that these duties shift or expand to creditors in certain circumstances such as insolvency, near-insolvency, and/or winding up. *See, e.g. DeNune v. Consolidated Capital of North America, Inc.*, 288 F.Supp.2d 844,859 (N.D. Ohio 2003) ("Under long-standing Ohio law, the officers and directors of a corporation that is insolvent or on the brink of insolvency owe a fiduciary duty to the corporation itself and to its creditors not to waste corporate assets which otherwise could be used to pay corporate debts."); *In re Bostic Const., Inc.*, 435 B.R. 46 (Bankr. M.D.N.C. 2010) (under North Carolina law, when directors and officers operate an insolvent corporation for their own benefit and to the detriment of creditors, the officers and directors are deemed to owe a fiduciary duty to creditors, and creditor with identifiable and personal damage has direct cause of action against individuals for damages); *Matter of Stevens*, 476 F.Supp. 147, n.5 (D.N.J. 1979) ("Under New Jersey law, when a corporation becomes insolvent, a quasi-trust relationship arises between the officers and directors on the one hand and the corporation's creditors on the other.") *citing Portage Insulated Pipe Co. v. Costanzo*, 275 A.2d 452 (N.J. App. Div. 1971); *RSL Communications PLC v. Bildirici*, 649 F.Supp.2d 184, 202 (S.D.N.Y. 2009) (citing cases and recognizing that corporate officers and directors owe duty to creditors in limited circumstances, including insolvency, under New York law); *In re Transcolor Corp.*, 296 B.R. 343, 365-366 (Bankr. D. Md. 2003) (in context of bankruptcy case, citing cases recognizing that a cause of action against a corporation and its

principals for fraud or wrongdoing is a direct cause of action and not derivative); *In re Zambrano Corp.*, 478 B.R. 670, 684-685 (Bankr. W.D. Pa. 2012) ("when a corporation is solvent, the officer and director owes a fiduciary duty to the corporation and its shareholders; when an entity is insolvent, the duties extend to creditors of the corporation."); *In re Tri-River Trading, LLC*, 329 B.R. 252, 267 (Bankr. D. Mo. 2005) ("When a corporation becomes insolvent, the fiduciary duty of directors shifts from the stockholders to the creditors.") (internal citation omitted).

Given the overwhelming weight of authority throughout other courts in this country, it is highly likely that Kentucky would follow suit and recognize that directors and officers owe fiduciary duties to creditors upon insolvency or entry into the zone of insolvency.  In other contexts, Kentucky courts have recognized that individual directors or officers can have personal liability to third parties (other than shareholders), including creditors.  For example, in *Enterprise Foundry & Machine Works v. Miners' Elkhorn Coal Co.*, the Kentucky Court of Appeals held that directors of a corporation may be personally liable for breach of fiduciary duty to parties other than the corporation itself.  45 S.W.2d 470, 474 (1931).  In that case, the Court recognized that:

> The directors of that corporation, by accepting their positions, assumed the discharge of certain duties not only to the company, but to persons dealing with it, and that if they misappropriated the funds intrusted [sic] to their control, ***and a creditor was damaged by the act, he had a right of action against them for the injury resulting from their illegal conduct***.

*Elkhorn Coal Co.*, 45 S.W.2d at 474 (emphasis added); *see also Stafford v. Cain*, 13 Ky.L.Rptr. 639 (Ky. Sup. Ct. 1892) (if director incurred indebtedness on behalf of corporation beyond statutory limit, would be personally liable to creditor).

Defendants miscomprehend the legal basis for Plaintiff's breach of fiduciary duty claims against Mr. Butler and Mr. Banta.  First, this case is not one of unlawful dividends under

§271B.8-330 as alleged by Defendants. (Motion, p. 15). That statute only applies to distributions to shareholders and does not foreclose common law liability of officers and directors who breach their fiduciary duties to creditors. Second, Plaintiff's claims are not based upon the debtor/creditor relationship only, and therefore are not based upon a fiduciary duty owed by *Corporex Realty* to Bank of America. (Motion, p. 16). Rather, as explained above, Plaintiff's claims are derived from the common law duties owed by *officers* and *directors* to creditors when the company is insolvent or in the zone of insolvency. Here, Mr. Butler and Mr. Banta caused the transfer of assets of Corporex Realty to Corporex Companies rendering Corporex Reality insolvent to the detriment of Plaintiff. If an officer or director engages in wrongdoing, "upon their acts being called into question by the corporation, **or its creditors**, the burden is imposed upon them to show by a preponderance of proof that they acted bona fide and that the corporation got the benefit of their act." *Elkhorn Coal Co*., 45 S.W.2d at 474 (emphasis added).

Further, to the extent that only one of the individual defendants is found to have engaged in a breach of fiduciary duty, Plaintiff has stated a claim for aiding and abetting that breach by the other individual defendant. (First Amended Complaint, Count IX). Kentucky recognizes aiding and abetting a breach of fiduciary duty as a cause of action. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 485 (Ky. 1991) ("a person who knowingly joins with or aids and abets a fiduciary in an enterprise constituting a breach of the fiduciary relationship becomes jointly and severally liable with the fiduciary for profits that may accrue."). Both of the individuals participated in the conduct that resulted in the transfer and dissipation of Corporex Realty's assets and executed the loan documents on behalf of Corporex Realty and Corporex Companies with Bank of America and the Other Lenders. (First Amended Complaint, ¶¶ 38-50;

Exs. D-J). The record includes ample evidence of participation, but discovery will be required to determine the extent of each of the Defendants' involvement.

## IV.    IF THERE IS A TRUE CONFLICT, THE CHOICE OF LAW ANALYSIS TO BE APPLIED TO THE FRAUDULENT TRANSFER CLAIMS IS FACT INTENSIVE AND SHOULD NOT BE DECIDED ON A MOTION TO DISMISS.

In the First Amended Complaint, Plaintiff has alleged the transfers of direct and indirect interests in real estate, cash, and other property involving as many as 25 different states. To date, no discovery has taken place and the details of the transfers are largely unknown. Despite the multi-state contacts which underpin Plaintiff's claims, Defendants urge this Court to blindly apply Kentucky law to the fraudulent transfer claims.

Defendants advocate for Kentucky law in hopes of obtaining a second favorable ruling that these claims must be dismissed as premature because Plaintiff does not have a judgment or a return *nulla bona*. For the reasons discussed below, however, Kentucky imposes no such requirements. If this Court agrees with Bank of America, then the choice of law issue may be ultimately rendered moot. However, if this Court agrees with Defendants' arguments on Kentucky fraudulent transfer law, then the choice of law determination may determine the outcome Plaintiff's fraudulent transfer claims (at least until Bank of America secures a judgment and executes on the judgment).

In light of the undeveloped factual record in this case, it is premature for this Court to decide what law applies to Plaintiff's fraudulent transfer claims. The details of the transfers – including the type of property transferred, the location transferred, and the amount transferred – are unknown and the choice of law analysis is highly dependent on these facts. "On a motion to dismiss, a court is required to accept the well-pleaded allegations of the complaint as true. Where a choice of law determination cannot be made on the pleadings, the motion should be

denied, without prejudice, leaving the material facts for later determination." *In re Jesup & Lamont, Inc.*, 507 B.R. 452, 476 (Bankr. S.D.N.Y. 2014) citing *Commerce and Indus. Ins. Co. v. U.S. Bank Nat. Ass'n*, No. 7 CIV. 5731 (JGK), 2008 WL 4178474 (S.D.N.Y. 2008); *In re Sevko, Inc.*, 143 B.R. 167, 174 (Bankr. N.D. Ill. 1992) (declining to decide a fraudulent transfer choice of law issue on a motion to dismiss); *Harper v. LG Electronics USA, Inc.*, 595 F.Supp.2d 486, 490 (D.N.J. 2009) (deferring choice of law analysis on motion to dismiss because factual record required developing, noting that "the Court need only determine if the Complaint contains enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element in order to allow the [claims] to remain.") (internal citation omitted); *Walker v. Unum Life Ins. Co. of America*, 530 F.Supp.2d 351, 354 (D. Me. 2008).

Defendants argue, without any legal support, that fraudulent transfers are considered torts for conflicts of law purposes, and therefore are governed by an "any significant contacts" test. (Motion, p. 8.) However, no reported Kentucky decision has held that fraudulent transfers are torts for choice of law purposes. As discussed more fully below, the choice of law principles applied to fraudulent transfers in complex, multi-state transactions such as this one are altogether unclear. *See, e.g.* Thomas H. Day, *Solution for Conflict of Laws Governing Fraudulent Transfers: Apply the Law That Was Enacted to Benefit the Creditors*, 48 Bus. Law. 889 (1993). Whether a fraudulent transfer is a tort, sounds in contract, or is something entirely different remains unsettled in the law.

With respect to transfers of real property, Defendants most certainly are wrong. Kentucky courts addressing creditor claims relating to transfers of real property will apply the law of the location of the real property. In *Bryant's Trustee in Bankruptcy v. Stephens*, the Court of Appeals held that the *lex loci sitae* rule applies in the context of a creditor's preference claim.

69 S.W.2d 1056 (Ky. 1934) ("… as the land is in Kentucky, the lex loci rei sitae, and not the lex loci contractus, controls the legal effect of the assignment.").  A preference claim is substantially similar to a fraudulent transfer claim and serves the same purpose of protecting creditors from transfers to avoid payment of debts.  *See e.g.* K.R.S. § 378.070 (Kentucky's preference law codified as part of same statutory scheme as fraudulent transfer law).  On many occasions, the Court of Appeals has found that "all matters concerning the title and disposition of real property are determined by what is known as the lex loci sitae, **which can alone prescribe the mode by which a title to it can pass from one person to another**."  *New Domain Oil & Gas Co. v. McKinney*, 188 Ky. 183 (1920) (emphasis added); *see also Lykins Enterprises, Inc. v. Felix*, 2007 WL 4139637 (Ky. 2007) (in dispute regarding sale and lease of real property, the Kentucky Supreme Court applied the law of Ohio, where the property is located, and not the law of Kentucky, where the transferor was located and where the transferee negotiated deal with transferor).  Similarly, the Sixth Circuit Court of Appeals has held that, when the government is pursuing a fraudulent transfer claim against a taxpayer, it is bound by the fraudulent transfer laws of the location of the property.  *U.S. v. Westley,* 7 F. App'x. 393, 400 (6th Cir. 2001) ("Where a taxpayer has allegedly fraudulently transferred his property prior to the filing of federal tax liens, the United States may seek relief under the applicable fraudulent conveyance laws of the state in which the property is located.") (internal citation omitted).

Other jurisdictions similarly hold that the law where the real property is located governs fraudulent conveyance actions.  *Citizens Bank of Clearwater v. Hunt*, 917 F.2d 707, 710 (1991) ("A fraudulent conveyance claim is governed by the law of the state in which the property is located."); *see also Reconstruction Fin. Corp. v. United Distillers Prods. Corp.,* 229 F.2d 1956 (same); *see also In re Sevko, Inc.*, 143 B.R. at  n. 4 ("the general tendency in deciding fraudulent

conveyance claims is to apply the law of the situs of the property at the time of the transfer."); *Bombardier Capital, Inc. v. Richfield Housing Center, Inc.*, No. 91-CV-502, 1994 WL 118294, at *4 (N.D.N.Y. Mar. 21, 1994)("under New York law the location of the property dictates what substantive law will govern suits concerning its [fraudulent] conveyance.").

Here, the First Amended Complaint alleges that Defendants transferred (or caused to be transferred) direct real estate interests of Corporex Realty.  The specifics of those transfers, including the location of the real property transferred, will be revealed through discovery.  Since Kentucky law provides that the law where the property is located will govern any choice of law dispute, discovery is needed before the choice of law issue can be decided.

With respect to transfers of other types of property, such as ownership interests in the underlying real estate assets, cash, and other assets, it is far from certain that Kentucky would apply a tort analysis to the choice of law issue.  No reported Kentucky decision has ever held as much.  Other courts addressing a tort vs. contract analysis have held that fraudulent transfer claims sound in contract.[2]  *See, e.g. United States v. Franklin National Bank*, 376 F.Supp. 378, 382 (E.D.N.Y. 1973) (fraudulent transfer claim under uniform fraudulent conveyance act is a claim in equity, not necessarily a tort grounded in fraud); *F.D.I.C. v. S. Prawer & Co.*, 829 F.Supp. 453, 455-456 (D. Me. 1993) (rejecting civil conspiracy claim with respect to fraudulent transfer because fraudulent transfer claim is not a tort); *Branch v. F.D.I.C.*, 825 F.Supp. 384, 420

---

[2]    A contract choice of law analysis is highly fact intensive.  For contract disputes, Kentucky courts apply the "most significant relationships" test under Section 188 of the Restatement (Second) of Conflict of Laws.  *Saleba v. Schrand*, 300 S.W.3d 177 (Ky. 2009).  The factors to be considered in this analysis are: (1) the place of contracting; (2) the place of negotiating the contract; (3) the place of performance; (4) the location of the subject matter of the contract; (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties.  Also to be considered are the (i) need for interstate and international systems, (ii) the relevant policies of the forum, (iii) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (iv) the protection of justified expectations, (v) the basic policies underlying the particular field of law, (vi) certainty, predictability and uniformity of result, and (vii) ease in the determination and application of the law to be applied.  The factors are not given equal weight.  *Asher v. Unarco Material Handling, Inc.*, 737 F.Supp.2d 662, 668 (E.D.K.Y. 2010).

(D. Mass 1993) (holding that fraudulent transfer claims are not subject to limitations of federal tort claims act); *U.S. v. Neidorf*, 522 F.2d 916, 918 (9th Cir. 1975) (in deciding applicable statute of limitations, holding that "[b]oth the liability of the transferee of a fraudulent conveyance and the liability of a shareholder to a creditor of the corporation are based not upon tort but upon quasi-contract."); *U.S. v. Moore*, 968 F.2d 1099, 1100 (11th Cir. 1992) (same); *Desmond v. Moffie*, 375 F.2d 742, 743-744 (1st Cir. 1967) (concluding that fraudulent transfer was akin to contract claim for purposes of statute of limitation, noting that "the essential basis of the statutory proceeding to set aside a fraudulent conveyance is an indebtedness that could ordinarily be enforced in an action of contract…") (internal citation omitted); *First State Bank of Nw. Arkansas v. McClelland Qualified Pers. Residence Trust*, No. 5:14-CV-130 MTT, 2014 WL 6801803, at *8 (M.D. Ga. Dec. 2, 2014) (same).

Some courts have held that when addressing choice of law issues, considerable – if not determinative – weight should be given to the law of the location of the property transferred.  For example, in *In re Morse Tool, Inc.*, which involved personal property, a bankruptcy court rejected strict adherence to either a tort or contract choice of law analysis.  *Morse Tool*, 108 B.R. 384, 386-387 (Bankr. D. Mass. 1989).  Rather, the court noted that the Restatement choice of law rules require an analysis of the basic policies underlying the *particular* field of law."  *Id.* at 386 (emphasis in original) (internal citation omitted).  The court ultimately looked to the location of the property transferred.  *Id.* at 387-388.

In yet another approach, courts apply the law which better protects the creditor, even if a different state has a stronger relationship to the claims.  *See, e.g. In re Mirant Corp.*, 2010 WL 8708772 at *29 (Bank. N.D. Tex. 2010) (despite Georgia's greater contacts with case, applying a more creditor-friendly New York law, which better achieved the fundamental policy of

fraudulent transfer law, which is "to protect creditors, and not transferees").  This is consistent with Kentucky case law which holds that fraudulent transfer laws are intended to protect creditors.  *Mattingly v. Gentry*, 419 S.W.2d 745, 747 (Ky. 1967).

Lastly, some courts give weight to the location of the creditors in determining what law to apply to a fraudulent transfer.  This approach focuses on harm caused to creditors rather than the location of the assets or the location of the transferor and transferee.  *See, e.g. Hassett v. Far West Federal Sav. & Loan Ass'n (In re O.P.M. Leasing Servs., Inc.*, 40 B.R. 380, 395 (Bankr. S.D.N.Y.) *aff'd*, 44 B.R. 1023 (S.D.N.Y. 1984).

Discovery is necessary to make a choice of law determination here.   Initially, a determination must be made as to the type(s) of property transferred.  Regardless of whether the property is real or personal, its location (before and after the transfers) is relevant and the details of the transactions are relevant.   As to ownership interests in real estate projects, even more facts are needed.  Among other things, the location of the underlying real estate project, the state of incorporation of the entity, and the location of the entity's creditors are directly relevant to the choice of law issue.  *See, e.g. Hassett*, 40 B.R. at 395 (location of creditors relevant).  With respect to transfers of cash and other assets, discovery on the location of the assets (both before and after they were transferred), the types of assets transferred, who ordered the transfers and from where are all relevant.   The potential complexity of the facts of this case, and its impact on the choice of law analysis, should not be overlooked.

Defendants state, in conclusory fashion, that all factors point to Kentucky, presumably because the transferor and transferee are located in Kentucky.  However, courts have generally rejected the location of the transferor and the location of the transferee as important factors in a fraudulent transfer choice of law analysis.  *See, e.g. Thomas H. Day, *Solution for Conflict of*

21

*Laws Governing Fraudulent Transfers: Apply the Law That Was Enacted to Benefit the Creditors*, 48 Bus. Law. 889, 892-895 (1993).  Given the multi-state nature of the allegations, the national footprint of Corporex, and the lack of detailed information on the transfers, any allegation that Kentucky has the most significant interest in this controversy is mere speculation. A far more likely conclusion is that the transfers involve substantial contacts with many states and will need to be examined on a transfer-by-transfer basis.

This Court does not have sufficient facts at this stage to make an informed decision on the choice of law issue.  Bank of America should be permitted to conduct discovery on the underlying transfers so that all pertinent facts can be presented to the Court before a ruling on choice of law is made.  *In re Sevko, Inc.*, 143 B.R. at 174; *In re Jesup & Lamont, Inc.*, 507 B.R. at 476; *Harper,* 595 F.Supp.2d at 490; *Walker v. Unum Life Ins. Co. of America*, 530 F.Supp.2d at 354.

## V.   THERE IS NO REQUIREMENT UNDER KENTUCKY LAW THAT PLAINTIFF FIRST OBTAIN A JUDGMENT OR A RETURN *NULLA BONA* TO STATE CLAIMS FOR FRAUDULENT TRANSFER.

As to any fraudulent transfers to which Kentucky law applies, Defendants argue that Bank of America must first have both a judgment and an unsatisfied writ of execution in order to state a claim for fraudulent transfer under K.R.S. §§ 378.010 or 378.020.[3]

A plain reading of the Kentucky statutes confirms that these requirements do not exist. Neither statutory provision requires that Plaintiff first obtain a judgment or an unsatisfied return

---

[3]      Defendants' judgment and *nulla bona* arguments are limited to Kentucky law.  As set forth above, Kentucky law may not apply to the fraudulent transfer claims or may only apply to a portion of the transfers. Defendants have sought dismissal of claims which are governed by the laws of the Real Property Ownership States other than Kentucky.  Under the Uniform Fraudulent Transfer Act ("UFTA"), which has been adopted in most if not all of the Real Property Ownership States (other than Kentucky), any creditor – whether or not such creditor has a judgment – may pursue a claim for fraudulent transfer.  Under the UFTA, a "creditor" is any person who has a "claim".  A claim means "a right to payment, *whether or not reduced to judgment*, …".  *See* UFTA, Section 1, Definitions; Fla. Stat. Ann. § 726.102(4) (West); Colo. Rev. Stat. Ann. § 38-8-102(3) (West).  For the reasons discussed above, Kentucky law is no different.

on execution.  K.R.S. § 378.010 provides that every transfer made with the intent to delay, hinder or defraud creditors, purchasers or other persons is "void as against such creditors, purchasers and other persons."  Nothing in this section requires a plaintiff to first obtain a judgment or an unsatisfied writ of execution.  The reference to "purchasers" and "other persons" in Section 378.010 makes it clear that the legislature did not intend to limit the statute to judgment creditors with unsatisfied writs of execution.

Similarly, K.R.S. § 378.020 states that every transfer made without consideration "shall be void as to all his then existing creditors."  Once again, there is no requirement that a plaintiff be a judgment creditor or that a plaintiff first have an unsatisfied writ of execution.

When statutes are clear – as they are here – this Court should apply them as written. *Griffin v. City of Bowling Green*, Ky., 458 S.W.2d 456 (1970) ("Where the words of the statute are clear and unambiguous and express the legislative intent, there is no room for construction or interpretation and the statute must be given its effect as written…") *Delta Airlines, Inc. v. Commonwealth of Kentucky, Revenue Cabinet, Ky*., 689 S.W.2d 14 (1985) (an unambiguous statute must be applied without resort to any outside aids).

Despite the fact that the Kentucky statutes impose no such requirements, Defendants cite to the 72-year old decision of *Shepherd v. Haymond*, 291 Ky. 780, 165 S.W.2d 812 (1942), in support of their position that Kentucky requires that a plaintiff seeking relief under K.R.S. § 378.010 or K.R.S. § 378.020 must first obtain a judgment and an unsatisfied writ of execution as conditions precedent to stating claims.

*Shepherd* does not support this proposition, and no reported decision has ever cited *Shepherd* in support of such conditions precedent.  The issue in *Shepherd* was not whether the Plaintiff had stated a cause of action to void fraudulent transfers, but rather whether the Plaintiff

was entitled to a *lien* on the property transferred to satisfy its indebtedness.  *Id.* at 811-812.  In this case, Bank of America has not asked for a lien on any of the transferred property.[4]

*Shepherd* involved a transfer of ten (10) promissory notes from the defendant-debtor to his brother in order to avoid repayment of debts to the plaintiff-creditor.  *Id.* at 814-815.  The case was a consolidation of two separate phases of claims.  *Id.*  In one phase, plaintiff-creditor filed suit against the defendant-debtor and his brother as the transferee of promissory notes issued in favor of the defendant-debtor both for judgment on the debt and for fraudulent transfer. In the second phase, the transferee-brother brought suit against the payees on the 10-notes.  The cases were consolidated.  *Id.*  The lower court held that the transfer of the notes to the brother by the defendant-debtor was fraudulent as to the plaintiff-creditor.  *Id.* The lower court went on to enter judgment against the payees on the notes in favor of the brother-transferee (as the holder of the notes) and granted plaintiff a lien upon all sums due under the notes to satisfy its judgment against the defendant-debtor.  Executions were ordered against all the payees until the defendant-debtor's debt to the plaintiff-creditor was paid in full.  *Id.*

On appeal, the authority of the lower court to grant plaintiff a lien in favor of the plaintiff on the amounts due him on the notes by virtue of their fraudulent assignment only was challenged.  *Id.* at 816.  Importantly, as to the issue of whether the transfer was fraudulent, the Court of Appeals reiterated that "*the evidence fully supports the judgment that the transfer of the ten notes was a fraudulent assignment to defeat [Defendant-transferor's creditors]… .*"  165 S.W.2d at 815 (emphasis supplied).

The focus of the decision was on the narrow issue of whether plaintiff was entitled to a lien on the choses in action (*i.e.* the claims under the notes) owing to the transferee-brother.  In

---

[4]       Although, pursuant to KRS 378.030, as to transfers of real property located in Kentucky, Plaintiff is automatically entitled to a lis pendens on such property pending the outcome of suit.

addressing this issue, the Court of Appeals remarked that nothing in the fraudulent transfer statutes gives a creditor a lien or provides specifically how a lien may be obtained on personal property fraudulently conveyed or transferred. *Id.* at 816. Prior to the enactment of the predecessor of KRS § 378.030, the Court explained that there must have been an attachment or return *nulla bona* on an execution "before the court was authorized to adjudge a lien on real estate fraudulent conveyed." *Shepherd*, 165 S.W. at 816. Since the transfers at issue in *Shepherd* did not involve real property, and because plaintiff had not acquired a lien on the choses in action through a return of *nulla bona* or through some other means, the Court of Appeals found that there was no basis for a judgment subjecting the choses in action to the satisfaction of the defendant-debtor's indebtedness to Plaintiff. *Id.* at 816-817.

Defendants' overstate the holding of *Shepherd*. The holding in *Shepherd* is limited to the narrow issue of the *remedy* to be afforded a plaintiff with respect to a fraudulent transfer. *Shepherd* stands for the proposition that a claimant is not entitled to a lien or attachment on property subject to a fraudulent transfer in the hands of the transferee absent a return of *nulla bona*.

*Shepard* has no bearing on this case. Bank of America is not asking for a lien on any of the transferred property to satisfy its debt at this time. Bank of America is seeking judgment declaring the transfers void in accordance with the plain language of K.R.S. § 378.010 and K.R.S. § 378.020 and/or money damages.[5] (First Amended Complaint, ¶ 93).

---

[5]    Relying on Judge Bunning's decision in *GATX Corp. v. Addington*, Defendants argue that money damages are not available under Kentucky law for a fraudulent transfer. 870 F. Supp.2d 633 (E.D. Ky. 2012). In *CNH Capital America, LLC v. Hunt Tractor, Inc.*, 568 Fed. Appx. 461 (6th Cir. 2014), which was decided after the *GATX* case, the Sixth Circuit declined to address this issue. This Court need not delve into this issue on a motion to dismiss. Whether or not money damages are available as a remedy goes to the *relief* sought in the First Amended Complaint and not the claim itself. Importantly, this argument only pertains to Kentucky law. As to the law of the other real property states, money damages are available under claims which are governed the UFTA. *See e.g. Hansard Const. Corp. v. Rite Aid of Florida, Inc.*, 783 So.2d 307 (money damages available under the "catch all" provision of Florida's Uniform Fraudulent Transfer Act); 37 Am. Jur. 2d. *Fraudulent Conveyances and Transfers §*

In further support of their position, Defendants incorrectly state that K.R.S. § 378.030 eliminates the requirement of a return of *nulla bona* as a condition precedent to stating a claim for a fraudulent transfer as to real property.  Defendants once again overstate the reach and purpose of K.R.S. § 378.030.  Similar to the issue in *Shepherd*, K.R.S. § 378.030 is focused on the *remedy* afforded to a creditor during the pendency of suit.  This section provides that when a petition is filed alleging a fraudulent transfer of real property, a lis pendens shall be imposed on the property without the need for a return of *nulla bona*.  Under this section, the Kentucky legislature made a policy decision to grant additional protections to creditors during the pendency of cases where real property is involved.  The lis pendens prevents further transfers of real property while a claim is pending.  Nothing in K.R.S. § 378.030 stands for the broad proposition advanced by Defendants that a judgment and return *nulla bona* is a condition precedent to stating a *claim* for a fraudulent transfer under Sections 378.010 or 378.020.  If anything, K.R.S. § 378.030 confirms that any requirement under Kentucky law relating to a judgment and a return *nulla bona* is limited the right of a lender to obtain a lis pendens on real estate, and not the viability of the cause of action itself.

Bank of America's claims for fraudulent transfer are simple and straightforward.  Bank of America is seeking to have the transfers declared void.  If additional remedies beyond the voiding of the transfers or money judgment are necessary, such as a lien, Bank of America will seek them at a later time.  As this Court has previously stated, "if the transfer meets the definition of a fraudulent conveyance, it shall 'be void as to *creditors* whose claims are thereafter contracted."  *GATX v. Addington*, 879 F.Supp.2d 633, 641-642 (E.D. Ky. 2012).

---

190 (2014) (courts have equitable power to award payment of money damages against the transferee).  As such, the issue should not be decided on a motion to dismiss.

**VI.    COUNT III AND VI OF THE FIRST AMENDED COMPLAINT STATE A CLAIM UNDER KENTUCKY FRAUDULENT TRANSFER LAW.**

In the Motion, Defendants allege that Counts III, IV, V and VI of the First Amended Complaint do not state claims under Kentucky law.  (Motion, p. 13).  However, Counts III and VI of the First Amended Complaint allege all elements required by the Kentucky statutes. Initially, K.R.S. § 378.010 provides:

> Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal, or right or thing in action, or any rent or profit thereof, made with the intent to delay, hinder or defraud creditors, purchasers, or other personas… shall be void as against such creditors, purchasers, and other persons.

K.R.S.  §  378.010.

Count III of the First Amended Complaint clearly alleges this standard and sets forth facts which support the allegation that the Corporex Companies acted with the "intent to delay, hinder, or defraud" Plaintiff.  (First Amended Complaint, ¶ 79).  Count III further sets forth facts that are "badges of fraud" in this case, as they are recognized under Kentucky law as well as under the uniform acts.  (First Amended Complaint, ¶ 80-92); *see Pergrem v. Smith*, 255 S.W.2d 42, 44 (Ky. 1953) ("Where badges of fraud are shown, it is a well-settled rule that the burden shifts to the transferee and he must rebut the inferences thereby created and sustain the bona fides of the transaction."); *Sweeney v. Farmers' State Bank of Greenville*, 219 Ky. 471, 293 S.W. 959, 960 (1927); *Bank of Josephine v. Hopson*, 516 S.W.2d 339, 341 (Ky. 1974).  This case very clearly includes numerous "badges" of fraud that would otherwise have the effect of shifting the burden to the Defendants, which include, without limitation:

- The transferee and transferor are affiliated entities (First Amended Complaint, ¶ 85);

- The transfers were concealed from the Plaintiff but disclosed to numerous other lenders  (*Id.*, ¶¶ 35-49, 86, 88);

- The transferor, Corporex Realty, had been subject to litigation with Plaintiff at or around the time of the transfers (*Id.* ¶¶ 28, 87);

- The transfers were of all or substantially all of Corporex Realty's assets (*Id.*, ¶ 89);

- There was no reasonably equivalent consideration exchanged for the transfers (*Id.*, ¶ 90); and

- The transfers rendered Corporex Realty insolvent (*Id.*, ¶ 91).

Likewise, Count VI of the First Amended Complaint states a claim under Kentucky's "constructive fraud" statute.  K.R.S. § 378.020 requires a showing that (1) the debtor made a transfer and (2) the transfer was without valuable consideration.[6]  K.R.S. § 378.020.  This is clearly alleged and supported by the First Amended Complaint.  (¶¶ 105-106).

## VII.   BANK OF AMERICA HAS STATED A CLAIM FOR AIDING AND ABETTING FRAUDULENT TRANSFER AGAINST BUTLER AND BANTA.

Count VII sets forth a claim for aiding and abetting fraudulent transfer and aiding and abetting fraud.  This count should proceed.  Kentucky law is altogether silent with respect to whether a third party may have joint and several accessory liability in connection with a fraudulent transfer under K.R.S. §§ 378.010 or 378.020.  Defendants argue that aiding and abetting a fraudulent transfer is not a viable cause of action in Kentucky based upon Judge Bunning's opinion in *GATX Corp. v. Addington*, 879 F.Supp.2d 633 (E.D. Ky. 2012) as well as the unpublished Sixth Circuit Court of Appeals decision in *CNH Capital America, LLC v. Hunt Tractor, Inc.*, 568 Fed. Appx. 461 (6th Cir. 2014) (unpublished).   As an initial matter, Judge's Bunning's decision, while it may be persuasive, is not binding on this Court.  What is more, as recognized by Judge Bunning in *GATX Corp.*, there are numerous states that recognize accessory

---

[6]      In comparison with the uniform acts, the language of the Kentucky statute has fewer requirements.  For example, the Kentucky statute does not require that the debtor be insolvent as a result of the transfer, as would be required under Section 5 of the uniform acts.  *See, e.g.* U.F.T.A. § 4(a)(2), 5.  It is interesting that Defendants devote so much time in the Motion introducing improper allegations of Corporex Realty's purported solvency when Corporex Realty's solvency is not even relevant under the Kentucky law which Defendants claim applies.

liability in connection with fraudulent transfer claims.  *See, e.g.  In re Restaurant Development Group, Inc.*, 397 B.R. 891, 897-898 (Bankr. N.D. Ill. 2008) (applying the UFTA but recognizing that the UFTA merely supplements aider-abettor state law and permitting aiding and abetting fraudulent conveyance claims); *Banco Popular North America v. Gandi*, 876 A.2d 253, 263 (N.J. 2006) ("in New Jersey, a creditor may bring a claim against one who assists another in executing a fraudulent transfer."); *McElhanon v. Hing*, 728 P.2d 273, 278 (Ariz. 1986) (permitting cause of action against attorney who conspires with debtor to commit fraudulent transfer); *Summers v. Hagen*, 852 P.2d 1165, 1169 (Alaska 1993); *Dalton v. Meister*, 239 N.W.2d 9, 19 (Wis. 1976).

More importantly, *GATX* and *CNH* are factually distinguishable.  In *CNH*, the Court found that there was no underlying fraudulent transfer because valid consideration was paid. *CNH*, 568 Fed. Appx. at 470.  Moreover, the Court expressed substantial doubt as to the defendant's participation in and knowledge of the challenged transaction.  *Id.* at 466, 470.  In *GATX*, the third-party defendants against whom aiding and abetting liability was sought were co-trustees of a trust that allegedly received the fraudulently transferred assets but did not cause the transfers to occur.  879 F.Supp.2d 633 (E.D. Ky. 2012).

Here, the individual defendants are alleged to have ***directly participated*** in and ***caused*** the transfers with ***knowledge and intent to hinder, delay, and/or defraud*** the Plaintiff.   There is ample evidence of underlying fraudulent transfers in this case.  The aiding and abetting claim should proceed based on the facts as alleged in the First Amended Complaint.  *See Constitution Bank v. DiMarco*, 155 B.R. 913, 921 (Bankr. E.D. Pa. 1993) (permitting accessory liability on fraudulent transfer claim to proceed past motion to dismiss when elements of claim are alleged in complaint, despite expressing doubt as to whether cognizable claim exists under state law).

## VIII.  BANK OF AMERICA HAS STATED A CLAIM FOR AIDING AND ABETTING FRAUD AGAINST BUTLER AND BANTA.

As an independent and alternative cause of action from the fraudulent transfer claim, Bank of America has stated a claim against Defendants Butler and Banta based on their role in the common law fraud by omission perpetrated against Bank of America.  Kentucky law provides for a legal theory of aiding and abetting to create joint and several liability of third parties with a tortfeasor.  Therefore, under Kentucky law, Plaintiff's claim for joint and several liability against the individual Defendants in connection with the common law fraud should proceed – even if this Court finds that there can be no joint and several liability of the individuals in connection with a fraudulent transfer.  *Hogan v. Goodrich Corp., No*. CIVA 05-159-C, 2006 WL 2037388, at \*1 (W.D. Ky. July 18, 2006); *Hogan v. Goodrich Corp.*, *Hogan v. Goodrich Corp.*, No. CIV.A. 05-159-C, 2006 WL 2056586, at \*1 (W.D. Ky. Mar. 1, 2006) *order clarified*, No. CIV.A. 05-159-C, 2006 WL 2056681 (W.D. Ky. May 16, 2006); *Steelvest, Inc. v. Scansteel Serv. Center, Inc.*, 807 S.W.2d 476 (Ky. 1991); *see also CNH Capital America, LLC v. Hunt Tractor*, *Inc.*, 568 Fed. Appx. 461, 467 (6th Cir. 2014) ("The law is well settled that an agent of a corporation is personally liable for a tort committed by him though he was acting for the corporation.").

## CONCLUSION

For the foregoing reasons, Plaintiff Bank of America, N.A. respectfully requests that this honorable Court deny the Motion to Dismiss in its entirety and direct the Defendants to answer the First Amended Complaint, together with such other relief as is just and proper.

Dated:  December 11, 2014

/s/ Christopher P. Schueller
Christopher P. Schueller (admitted pro hac vice)
Timothy P. Palmer (admitted pro hac vice)
John R. Leathers
Buchanan Ingersoll & Rooney PC
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA 15219
Telephone: 412-562-8800
Fax: 412-562-1041
E-mail:  christopher.schueller@bipc.com
         timothy.palmer@bipc.com
         john.leathers@bipc.com

*Attorneys for Plaintiff, Bank of America, N.A. successor
by merger to LaSalle Bank, National Association*