IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

| | |
|---|---|
| BANK OF AMERICA, N.A., successor by merger to LASALLE BANK, NATIONAL ASSOCIATION,<br><br>Plaintiff,<br><br>vs.<br><br>CORPOREX COMPANIES, LLC, WILLIAM P. BUTLER and THOMAS E. BANTA<br><br>Defendants. | Civil Action No. 2:14-cv-00165-ART-JGW<br><br>Judge Amul R. Thapar<br><br>Magistrate J. Gregory Wehrman |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

### INTRODUCTION

Defendants' Motion to Dismiss ("Motion") (Doc. No. 25) should be granted.[1] The Bank's Response in Opposition ("Response") (Doc. No. 26) confirms that its First Amended Complaint is premature under Kentucky law. The Bank seeks to recover on the alleged debt of *Corporex Realty* from the *Defendants in this action* even though Corporex Realty's liability has been vigorously contested for over three years in a related action before this Court.[2] Under Kentucky law, the Bank must first have a judgment against Corporex Realty and an unsatisfied

---

[1] Capitalized terms in this Reply shall have the meaning given to them in the Motion.

[2] The Bank's motion for summary judgment on all of its and Corporex Realty's claims is fully briefed and now pending before Judge Bunning. Addressing virtually identical claims in the related Florida action, Judge Merryday denied the Bank's motion for summary judgment seeking the dismissal of the Corporex borrower's counterclaims. *SMA Portfolio Owner, LLC v. CPX Tampa Gateway OPAG, LLC*, No. 8:11-cv-1925-T-33EAJ, 2014 WL 4545804 (M.D. Fla Sept. 12, 2014)

14618787.1

writ of execution or a lien via *lis pendens* before it can bring these claims against these Defendants, none of which the Bank has. Thus, it is not surprising that the Bank has sought to avoid the application of Kentucky law by amending its complaint now to allege claims under the laws of "as many as 25 different states" instead of under Kentucky law, as it did in its original complaint. However, no matter how the Bank purports to characterize its claims, they remain subject to Kentucky law, and the First Amended Complaint ("FAC") fails to state a claim for relief under Kentucky law. For these reasons, the Motion to Dismiss should be granted.

The Bank opens its Response by inaccurately claiming that Defendants "devote numerous pages of their brief to disputing the facts as alleged in the First Amended Complaint." (Response at 1). Although Defendants devote a few lines to what they would prove, if it became necessary, they otherwise assume as true the facts alleged in the First Amended Complaint. Defendants also refer to the facts as set forth in the court decisions relating to the disputes between the Bank and Corporex and to the provisions in the exhibits to the First Amended Complaint which permit transfers in the ordinary course of business that would not have a material adverse effect on the business or financial conduct of Corporex Realty or its obligations under the Guaranty and which establish the materiality threshold, specifically $10 million in cash and $85 million in current value net worth. (See Motion at 5 – 6, and citations to the record therein and FAC Exs. A – C). These facts further support the conclusion that the Bank's action is premature and should be dismissed.

**ARGUMENT**

I. **Kentucky Law Applies to the Bank's Claims.**

The Bank seeks to forestall dismissal of its fraudulent transfer claims by asserting that, until discovery has taken place, it is premature for the Court to determine that Kentucky law

applies.  (Response at 16 – 17).³  However, the Bank ignores both the allegations in its First Amended Complaint and Kentucky's unique choice of law rules which this Court, sitting in diversity, is required to apply.  *Georgel v. Preece*, No. 13-57-DLB-EBA, 2014 WL 5500404, *2 (E.D. Ky. Oct. 30, 2014); *Mountain Motorsports Paving and Construction LLC v. Yamaha Motor Corp., U.S.A.*, No. 14-76-ART, 2014 WL 5341865, *3 (E.D. Ky. Oct. 20, 2014).  The Bank contends that this Court should apply the law of each of the states where the allegedly transferred properties are located and, therefore, that the Court cannot make a choice of law determination until it knows those locations.  In making that argument, the Bank relies upon irrelevant cases from other states (Response at 17 – 22) and Kentucky cases that have nothing to do with fraudulent transfer claims.  (Response at 17 – 18).⁴  Regardless of what the Bank thinks the applicable law should be, the Bank cannot overcome Kentucky's "egocentric" and "protective" preference for Kentucky law.  *Bosch v. Bayer Healthcare Pharmaceuticals, Inc.*, 13 F.Supp.3d 730, 736 (W.D. Ky. 2013); *Paine v. La Quinta Motor Inns, Inc.*, 736 S.W.2d 355, 357 (Ky. App. 1987) (overruled on other grounds).

The allegations of the First Amended Complaint are sufficient to demonstrate that Kentucky law applies to the Bank's fraudulent transfer claims.  *Adam v. J.B. Hunt Transp.*, 130 F.3d 219, 230 (6th Cir. 1997) (abrogated on other grounds); *Reichwein v. Jackson Purchase Energy Corp.*, 397 S.W.3d 413, 416 (Ky. App. 2012).  The First Amended Complaint challenges transfers between Corporex Realty and Corporex Companies (FAC, at ¶¶ 1 – 3), which allegedly were facilitated by Messrs. Butler and Banta. (*Id.* at ¶¶ 34, 118, 125 – 26).  Corporex Realty and

---

³ The Bank effectively admits that all of its other alleged claims are governed by Kentucky law.

⁴ Two of the three cases cited by the Bank applied Kentucky law, which is consistent with Defendants' position that Kentucky courts strongly prefer to apply Kentucky law.  *See Bryant's Trustee in Bankruptcy v. Stephens*, 253 Ky. 573, 69 S.W.2d 1056 (1934), and *New Domain Oil & Gas Co. v. McKinney*, 188 Ky. 183, 221 S.W. 245 (1920).  The other case, *Lykins Enterprises, Inc. v. Felix*, Nos. 2006-SC-000142-DG, 2006-SC-000624-DG, 2007 WL 4139637 (Ky. 2007) (unpublished), involved the interpretation of a lease of Ohio real property.

Corporex Companies are both Kentucky companies headquartered in Kentucky; Messrs. Butler and Banta are both residents of Kentucky. (*Id.* at ¶¶ 9 – 11, 69). The Bank's own factual allegations establish that Kentucky has significant contact with this action and that Kentucky law applies to the Bank's fraudulent transfer claims (and to the other claims, as the Bank effectively admits). *Pritchett v. Kentucky Bank & Trust Co.*, 209 S.W. 541, 542 (Ky. 1919) (finding in a fraudulent transfer case that, where "assignment of the note . . . was made in Kentucky, [] the validity of the assignment must be determined by the law of this state").

The Bank's suggestion that Kentucky courts would not apply the Kentucky choice of law rules applicable to tort actions to the Bank's fraudulent transfer claims also is based on decisions outside Kentucky. Unlike states that have adopted the Uniform Fraudulent Conveyance Act or the Uniform Fraudulent Transfer Act, Kentucky's approach to fraudulent transfer is rooted in English common law. Douglas C. Michael, *The Past and Future of Kentucky's Fraudulent Transfer and Preference Laws*, 86 Ky. L. J. 937, 939, 945-48 (1998). In Kentucky, a claim of fraudulent transfer "is bottomed on the fraud attempted to be perpetrated in order to defeat creditors." *Morgan v. Hibbard, Spencer, Bartlett & Co.*, 184 S.W.2d 218, 220 (Ky. 1944). Likewise, Kentucky courts rely upon "badges of fraud" in evaluating fraudulent transfer claims. *Jadco Enterprises, Inc. v. Frannon*, 991 F.Supp. 2d. 947, 951-53 (E.D. Ky. 2014). The statute of limitations applicable to claims for fraud, KRS 413.130, also applies to fraudulent transfer claims. *Pergrem v. Smith*, 255 S.W.2d 42, 43-44 (Ky. 1953); and *Morgan, supra*. Thus, the Court should apply the conflict of laws rules that govern tort claims to the Bank's fraudulent transfer claims.

The Bank's reliance upon a law review article that does not cite a single Kentucky case to circumvent clear Kentucky authority is misplaced. (Response at 17) (citing Thomas H. Day,

*Solution for Conflict of Laws Governing Fraudulent Transfers: Apply the Law that was Enacted to Benefit the Creditors*, 48 Bus. Law. 889 (1993)).  The article has never been cited in a Kentucky state or federal court decision and ignores the very strong preference that Kentucky courts give to the application of Kentucky law. Moreover, the Bank urges this Court to apply the laws of states in which the allegedly transferred real properties were located.[5]  Even the article rejects the conflict of law rule advocated by the Bank here.  *See* 48 Bus. Law. at 902-3.[6]

Kentucky courts strongly prefer the application of Kentucky law.  *Bosch*, 13 F.Supp.3d at 736; *Paine,* 736 S.W.2d at 357.   The factual allegations in the First Amended Complaint establish that Kentucky has numerous and substantial contacts with the alleged matters in issue.  Therefore, Kentucky law governs the Bank's fraudulent transfer claims.

## II. All of the Bank's Claims Should be Dismissed.

### A. The Bank Does Not Have a Judgment Against Corporex Realty.

In its Response, besides making a number of false statements regarding the underlying facts, the Bank claims that it may file a fraudulent transfer action against Corporex Companies (the alleged transferee) before first obtaining a judgment against Corporex Realty (the alleged transferor) because Kentucky's fraudulent transfer statute does not expressly state that the Bank must first obtain a judgment. (Response at 22). [7]  The Bank misreads Kentucky law.  Prior to

---

[5]  No real property was transferred by Corporex Realty but, for purposes of this Motion, the Bank's allegation is accepted as true.

[6]  An analysis of the case law dealing with choice of law issues that has evolved in those states which have adopted the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act is beyond the scope of this discussion.  It is interesting to note, however, that the uniform act proposed to replace the UFCA and the UFTA (the Uniform Voidable Transactions Act) specifically provides that the governing law in fraudulent conveyance cases is the law of the state in which the transferor is located and thus would produce the same result mandated by Kentucky choice of law principles in this case—application of Kentucky law.  Uniform Voidable Transactions Act, § 10.

[7]  Among the demonstrably misleading statements made by the Bank in its Response are the following: (1) The Bank alleges that, in the event of any transfer of assets to a William Butler owned entity, the Corporex Realty Guarantees required the transferee to become a guarantor.  (Response at 3).  The Guarantees contain no such requirement.  (FAC at Exs. A – C, § 10.)  The Guarantees require a new guarantor only in the event that Corporex Realty merges into another entity owned or controlled by William Butler or into a publicly traded entity.  (2)  The Bank contends that Corporex Realty "admitted" in loan documents with other banks that it was insolvent or about to become

1896, Kentucky law required a judgment and an unsatisfied execution in order to bring a claim for fraudulent conveyance. *Crooke v Hume's Ex'x*, 139 Ky. 834, 109 S.W. 364, 368 (1908). In 1896, the predecessor to KRS 378.030 was added, dispensing with the requirement of an unsatisfied writ of execution in actions to set aside conveyances of real property, but not dispensing with that requirement with respect to personal property. *Id.* Thus, a creditor seeking to void a transfer of personal property must obtain a judgment against the transferor and have an unsatisfied writ of execution before it can bring a claim against the transferee. A creditor seeking to void a transfer of real property must bring an action *in rem* adequately describing the real property that was transferred. See *Taylor v. Rapp Lumber Co.*, 59 S.W.2d 5, 6 (1933) ("[Creditor] was authorized by [KRS 1907a, the predecessor to KRS 378.030] to go into a court of equity either with or without first reducing its claim to a judgment and having a return of no property thereon, and have the property subjected to a lien which was created upon the filing of its petition, setting out the facts and *describing the property charged to have been conveyed* . . .") (emphasis added). Here, the Bank makes only general allegations regarding the transfer of fee interests in real estate. (FAC at ¶¶ 2 and 33) The First Amended Complaint does not describe any specific real estate that was allegedly transferred and the Bank does not bring any claims *in rem*. These general allegations are wholly insufficient to create a lien by virtue of *lis pendens*. *Morton v. Jones*, 136 Ky. 797, 125 S.W.2d 247, 249 (1910) (for *lis pendens* to arise, creditor must bring suit "in rem . . . against specific property sufficiently identified by the record" and to

---

insolvent. (Response at 4). Corporex Realty did no such thing, and the provisions in the documents identified by the Bank do not support the Bank's representation. What Corporex Companies accomplished with the provisions cited by the Bank was to take on guaranty obligations of Corporex Realty, thereby reducing Corporex Realty's exposure to liability to those other banks, and to remove potential triggers for default, thereby lessening the likelihood of adverse actions by those banks against Corporex Realty. These provisions strengthened Corporex Realty's financial position. They did not weaken it. (3) The Bank argues that Mr. Butler and Mr. Banta signed the amendments with other banks either in their individual capacities or corporate capacities. (Response at 5). The documents the Bank attached as exhibits to its First Amended Complaint show that all signings were in a corporate capacity. (FAC at Exs. D – J). To insinuate otherwise by stating in the alternative that they may have signed in their individual capacities is misleading, at best.

which the title holder must be a named party). Accordingly, the Bank's allegations are wholly insufficient to state a fraudulent transfer claim against real property.

The Bank also misses the point when it argues that *Shepherd v. Haymond*, 165 S.W.2d 812, 816 (Ky. 1942), merely concerned a creditor's right to a lien on transferred property. As the court in *Shepherd* explained, a fraudulent transfer action cannot proceed without a lien: "***for the maintenance of a suit*** under [Kentucky's fraudulent transfer statute], there must have been a lien obtained either by attachment or by the levy of an execution, with a return of 'no property found.'" *Shepherd*, 165 S.W.2d at 816 (emphasis added). Because the Bank does not have a lien via a judgment and unsatisfied execution (with respect to transfers of personal property) or a lien via *lis pendens* (with respect to alleged transfers of real property), this action is premature and must be dismissed.

> **B. The Bank's Attempt to Extend Kentucky's Fraudulent Transfer Statutes to Common Law Theories of Recovery Should be Rejected.**

The Bank argues that its common law theories of recovery are separate and distinct from its fraudulent transfer claims and, therefore, should survive any dismissal of the fraudulent transfer claims. (Response at 2). This argument ignores the allegations in the First Amended Complaint which confirm that the Bank's common law theories of recovery are entirely dependent upon the existence of the alleged fraudulent transfers. In Counts I and II (Successor Liability and Fraud by Omission), the Bank claims that "Corporex Companies is a transferee or purchaser of assets of Corporex Realty" and "entered into […] transactions fraudulently in order to escape the liabilities of Corporex Realty." (FAC at ¶¶59 – 61, 67 – 69). In Count VIII (Breach of Fiduciary Duty), the Bank claims that "Butler and Banta breached [a fiduciary duty] to Plaintiff by causing Corporex Realty's assets . . . to be transferred to Corporex Companies" which "reduc[ed] the net value of Corporex Realty by at least 75% . . ." (*Id.* at ¶¶118, 119).

The Bank's attempt to substitute common law claims of successor liability, fraud by omission and breach of fiduciary duty for its deficient fraudulent transfer claim should be rejected. Such bootstrapping of common law theories to Kentucky's fraudulent transfer statute would permit a creditor to do precisely what Kentucky law prohibits—bring a fraudulent transfer claim against a third party transferee before the creditor has a judgment and unsatisfied execution (for purposes of personal property) or without *lis pendens* (for purposes of real property) against the alleged debtor transferor.

### III. The Bank's Common Law Theories Fail to State a Claim for Additional Reasons.

#### A. Successor Liability.

The Bank argues that it has stated a claim against Corporex Companies (the alleged successor) even though it has not alleged that Corporex Realty (the alleged predecessor) has ceased operating and no longer exists. As Judge Reeves recently ruled, "[w]here . . . the original entity still exists, there is no successor and thus no successor liability." *In re Darvocet, Darvon & Propoxyphene Products Liab. Litig.*, No. 2:11-MD-2226-DCR, 2012 WL 1135707, at *1 (E.D. Ky. Apr. 4, 2012) (granting motion to dismiss and refusing to find successor liability because plaintiff admitted that the alleged predecessors "continue to operate"). Several other jurisdictions agree that the continued existence of a predecessor precludes successor liability. *See In re Welding Fume Products Liab. Litig.,* 1:03–CV–17000, 2010 WL 2403355, at *7 (N.D. Ohio June 11, 2010) ("Of course, if the original entity still exists, there is no successor – and no successor liability."); *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.,* 879 F. Supp. 407, 410 (D. Vt. 1995) ("It is axiomatic that to establish corporate successor liability there must, in fact, be a corporate successor.") Because the Bank has not alleged that Corporex Realty has ceased to exist, there can be no successor liability.

The Bank's reliance on *Am. Ry. Express Co. v. Commonwealth*, 190 Ky. 636, 228 S.W. 433 (1920), is misplaced. The Court found successor liability only because the predecessor discontinued operations in *Kentucky*, which supports Defendants' position here. *Id.* at 441. Indeed, it was undisputed that the predecessor no longer "engaged in any kind of actual business" and held assets only in other states and only "for the purpose of winding up its affairs." *Id.* at 435.[8]

### B. Fraud by Omission.

The Bank's explanation of its fraud by omission claim confirms that the First Amended Complaint fails to state a claim for fraudulent concealment. The Bank claims that Corporex Realty, which is not a party to this action, owed the Bank a duty of disclosure because (1) Corporex Realty was a party to a contract with the Bank, (2) Corporex Realty had superior knowledge with respect to the transfers; and (3) Corporex Realty provided its financial statements to the Bank that created the impression of full disclosure without disclosing the transfers. (Response at 11 – 12) The Bank's claim against Corporex Companies for Corporex Realty's alleged fraud fails for at least four reasons.

### 1. Corporex Companies is Not a Successor to Corporex Realty.

"[A] fraud by omission claim is grounded in a duty to disclose," and the existence of such a duty "is a matter of law for the Court." *Giddings & Lewis, Inc. v. Industrial Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011). The Bank does not allege that Corporex Companies owed an independent duty to disclose. Instead, the Bank asserts that its fraud by omission claim "is premised on the fact Corporex Companies is the legal successor to Corporex Realty." (Response

---

[8] In the three other cases cited by the Bank, the courts *refused* to find successor liability. *Dixstar v. Gentec Equip.*, No. CIV.A. 3:02CV-45-H, 2004 WL 3362501, at *1 (W.D. Ky. Feb. 11, 2004); *Conn v. Fales Div. of Mathewson Corp.*, 835 F.2d 145, 146 (6th Cir. 1987); *Pearson ex rel. Trent v. Nat'l Feeding Sys., Inc.*, 90 S.W.3d 46, 52 (Ky. 2002). Moreover, in *Dixstar*, the court noted that the predecessor's "continued operations for almost a year following the formation of the new companies . . . [runs] directly contrary to the concept of successor liability." *Dixstar,* 2004 WL 3362501 at *7.

at 11). As discussed above, under Kentucky law, Corporex Companies cannot be the successor to Corporex Realty. Accordingly, Corporex Companies did not owe a duty to disclose to the Bank.

### 2. The First Amended Complaint Does Not Contain Sufficient Facts to Support its Claim of Fraud by Omission.

The First Amended Complaint does not identify any disclosures made by Corporex Companies. The Bank thus relies on its allegation that *Corporex Realty* made incomplete disclosures in the form of its financial statements after the transfers. (Response at 12) However, the only reference in the First Amended Complaint that remotely relates to financial statements is the allegation that "Corporex Realty was required to provide Plaintiff with regular financial disclosures." (FAC ¶ 71) Pursuant to Fed. R. Civ. Pro. 9(b), the Bank is required to state with particularity the facts underlying its fraud claim against Corporex Companies. *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 255-56 (6th Cir. 2012) ("To maintain its fraud-by-omission claims under [Rule 9(b)], Republic must specify the who, what, when, where and how of the alleged omission.") (internal quotations omitted). The First Amended Complaint falls woefully short of this requirement, and the Bank cannot supplement the First Amended Complaint by alleging additional facts in its memorandum. *Third Nat. Bank in Nashville v. Showbiz Pizza Time, Inc.*, 60 F.3d 829, *4 (6th Cir. 1995) (unpublished) (affirming district court's decision to grant motion to dismiss because, among other reasons, "[w]hile the briefs make a strong argument and offer substantial assertions . . . it is the complaint, not the briefs, that the court reviews for sufficiency").

The Bank contends that it relied to its detriment on a fraudulent omission and asserts that if Defendants had disclosed the transfers, the Bank would have filed this action sooner and sought injunctive relief to "stop transfers which had not yet occurred." (Response at 12)

However, as noted above, this action is premature because the Bank has not obtained a judgment against Corporex Realty or asserted a lien via *lis pendens* on any real property transferred.  If the Bank had brought this action earlier, it also would have been premature.  Moreover, the Bank first filed its fraudulent transfer claims over a year ago, in the United States District Court for the Western District of North Carolina, yet did not seek injunctive relief there nor in this case or in the case before Judge Bunning.  *Bank of America, N.A. v. Corporex Companies, LLC,* 2014 WL 3731778, *2 (W.D.N.C. July 28, 2014).  Therefore, the Bank's claim that it would have sought injunctive relief earlier, if the transfers had been disclosed, is belied by the fact that the Bank has not stated such a claim for over the past year.  The Bank has not relied to its detriment upon Corporex Realty's alleged failure to disclose the transfers.

### 2. Corporex Realty Did Not Owe the Bank a Duty to Disclose.

Under Kentucky law, a duty to disclose can arise only in four situations:  (1) a confidential or fiduciary relationship; (2) a duty provided by statute; (3) when a party has partially disclosed material facts to the plaintiff but created the impression of full disclosure; or (4) where one party to a contract has superior knowledge.  *Giddings*, 348 S.W.3d at 747-48.  The Bank does not rely upon either of the first two grounds for establishing a duty to disclose.  (Response at 11).  Moreover, absent a fiduciary duty, Kentucky courts are "careful not to apply the other three circumstances so broadly as to transform everyday, arms-length business transactions into fiduciary relationships."  *Gresh v. Waste Serv. of Am., Inc.*, 311 Fed. Appx. 766, 772 (6th Cir. 2009); *Burudi v. Branch Banking & Trust Co.*, 2013 WL 1309763, * 4 (W.D. Ky. March 25, 2013).  As the Sixth Circuit observed in *Gresh*:

> It is the rare commercial relationship that does not involve one party with *some* knowledge advantage over the other, and in many business transactions *each* party will believe it has superior knowledge of what the commercial future will bring, which is frequently what motivates the deal . . . .

>311 Fed. App'x at 773 (emphasis in original).

Accordingly, in Kentucky, the "superior knowledge" factor has been applied only in limited situations involving sales, where the seller has knowledge of a material defect and withholds that information from the buyer. *See Id.,* at 772; *Smith v. General Motors Corp.*, 979 S.W.2d 127, 129-31 (Ky. App. 1998). In addition, the failure to disclose must be "so shocking to the ethical sense of the community, and … so extreme and unfair, as to amount to a form of swindling, in which the plaintiff is led by appearances into a bargain that is a trap, of whose essence and substance he is unaware." *Gresh*, 311 Fed. App'x at 772, quoting Restatement (Second) of Torts § 551 cmt. 1. The Bank's allegations do not satisfy that high standard.

    **C.    Breach of Fiduciary Duty and Aiding and Abetting Breach of Fiduciary Duty.**

The Bank claims that an officer or director of an insolvent corporation owes a fiduciary duty to the corporation's creditors. (Response at 13 – 16). The Sixth Circuit Court of Appeals, applying Kentucky law, has rejected this exact proposition of law:

> Peoples Bank's central argument . . . was that Kentucky common law creates a trust whenever a corporation is insolvent, and that a director of the corporation then owes a fiduciary duty not to make payments to shareholders to the detriment of the insolvent corporation's creditors. We find that Peoples bank [sic] has failed to establish that, under Kentucky law, the assets of an insolvent corporation form the res of a trust fund that the directors of the insolvent corporation hold in trust for their creditors

*Re Penick*, 149 F.3d 1184, *4 (6th Cir. 1998) (unpublished).

Moreover, contrary to the Bank's suggestion, the Kentucky Court of Appeals' decision in *Enterprise Foundry & Machine Works v. Miners' Elkhorn Coal Co.,* 241 Ky. 779, 45 S.W.2d 470 (1931), did not involve a breach of fiduciary duty owed by the directors of a corporation to a creditor. (Response at 14 – 15). Instead, the Court held that the directors were liable for *conversion* for taking a mortgage on rail cars acquired by their company and forcing them to be

sold for their personal benefit, despite knowing of the plaintiff's pre-existing lien on the cars. *Id.,* at 475. And in the other Kentucky case cited by the Bank, *Stafford v. Cain*, 13 Ky.L.Rptr. 639 (Ky. Sup. Ct. 1892), the superior court held that directors were personally liable for a debt because that it was a fraud per se upon the creditors under the applicable, but *since repealed,* Kentucky corporate statute, 56 Gen. St., sec 9. *See, Guenther v. Baskett Coal Co.*, 107 Ky. 44, 52 S.W. 931 (1899).

Thus, it is no surprise that the Bank ignores *Penick* and asks this Court to adopt the holdings of *other* jurisdictions. (Response at 14). The Bank also fails to account for the number of jurisdictions that have, like *Penick*, refused to find that an officer or director of an insolvent corporation owes a fiduciary duty to the corporation's creditors. *See*, *e.g., In re Rouette*, 500 B.R. 670, 678 (Bankr. D. Conn. 2013) ("officers and directors of corporations and Limited Liability Companies do not owe fiduciary duties to such entities' creditors"); and *In re Eisaman*, 387 B.R. 219, 224 (Bankr. N.D. Ind. 2008) ("when a corporation becomes insolvent, Indiana does not make corporate officers and directors fiduciaries for the corporation's creditors. Instead, their duties always run to the corporation and its shareholders, not to the corporation's creditors") (internal citation omitted). As the Delaware Supreme Court held:

> Recognizing that directors of an insolvent corporation owe direct fiduciary duties to creditors would create uncertainty for directors who have a fiduciary duty to exercise their business judgment in the best interest of the insolvent corporation. To recognize a new right for creditors to bring direct fiduciary claims against those directors would create a conflict between those directors' duty to maximize the value of the insolvent corporation for the benefit of all those having an interest in it and the newly recognized direct fiduciary duty to individual creditors. . . . Accordingly, we hold that individual creditors of an insolvent corporation have no right to assert direct claims for breach of fiduciary duty against corporate directors.

*North Am. Catholic Educ. Programming Found., Inc. v. Gheewalla,* 930 A.2d 92, 103 (Del. 2007) (footnote omitted).

### D. Aiding and Abetting Fraud and Fraudulent Conveyance.

The Bank's aiding and abetting fraud claim fails because, as set forth above, its fraud claim fails. The Bank also asks this Court to ignore Judge Bunning's opinion in *GATX Corp. v. Addington,* 879 F. Supp. 2d 633 (E.D. Ky. 2012), and recognize a claim for aiding and abetting fraudulent conveyance. (Response at 28 – 30). This Court should not depart from the holding of *GATX*. As Judge Bunning stated, the "overwhelming majority of states" have refused to recognize a claim of aiding and abetting a fraudulent conveyance. *Id.,* at 643.

In an attempt to salvage its claim, the Bank asks this Court to reject Judge Bunning's decision and instead follow the "numerous other states" mentioned by Judge Bunning in his opinion that "recognize *accessory* liability in connection with fraudulent transfer claims." (Response at 28) (emphasis added).[9] This Court should reject that request. Judge Bunning's citation to this other authority had nothing to do with the claim alleging aiding and abetting a fraudulent transfer. Instead, Judge Bunning referenced it in an entirely different section of his opinion addressing "conspiracy to effect a fraudulent conveyance." *GATX*, 879 F. Supp. 2d at 648 n.7. Even then, Judge Bunning concluded—just as he did with the aiding and abetting fraudulent transfer claim—that "conspiracy to effect a fraudulent conveyance" is not a viable cause of action in Kentucky. *Id.*, at 650.

---

[9] Judge Bunning referenced only four states that recognize claims of accessory liability in connection with fraudulent transfers. *GATX*, 879 F. Supp. 2d at 648.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court dismiss this action in its entirety.

>Respectfully submitted,
>
>/s/ Earl K. Messer
>Earl K. Messer (*pro hac vice*)
>Taft Stettinius & Hollister LLP
>425 Walnut Street, Suite 1800
>Cincinnati, OH  45202-3957
>Phone:  (513) 357-9652
>Fax:  (513) 381-0203
>Email:  messer@taftlaw.com
>
>Robert B. Craig (15590)
>Taft Stettinius & Hollister LLP
>1717 Dixie Highway, Suite 910
>Covington, KY  41011
>Phone:  (859) 547-4300
>Fax:  (513) 381-6613
>Email:  craigr@taftlaw.com
>
>Robert L. Rocke (*pro hac vice*)
>Raul Valles, Jr. (*pro hac vice*)
>ROCKE, McLEAN & SBAR, P.A.
>2309 S. MacDill Avenue
>Tampa, FL  33629
>Phone:  813-769-5600
>Fax:     813-769-5601
>Email:  rrocke@rmslegal.com
>
>*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 29, 2014 this document was served upon counsel of record through this Court's CM/ECF system.

/s/ Earl K. Messer