UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 14-165-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPNION** |
| CORPOREX COMPANIES, LLC, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Much like board game enthusiasts engaged in a round of Monopoly, the participants in this litigation had one primary goal:  to make money through developing property.  And just as in the classic game of chance, key players in this litigation borrowed money from a bank and applied the funds toward developing real estate ventures.  But there ends the similarity between the game and the financial transactions that gave rise to this case.  A friendly round of Monopoly may, at worst, involve high rents (Boardwalk, in particular), unlucky dice rolls ("Luxury Tax") or even unfortunate card draws ("Go directly to Jail").  The real estate development efforts here, however, had more serious consequences.  The transactions spawned multiple civil actions in several district courts across the country to unwind alleged fraudulent conveyances made in different states.

Plaintiff Bank of America, N.A. ("the Bank" or "Bank of America"), as successor to the original lender in this litigation, no longer wants to play the banker.  Instead, Bank of America wants to undo fraudulent conveyances that it alleges a guarantor made in an attempt to avoid repaying its loans.  The Bank also seeks damages for other injuries stemming from

the guarantor's bad behavior.  To these ends, Bank of America initiated this lawsuit against Corporex Companies, LLC ("Corporex Companies") and two of its officers—William P. Butler and Thomas Banta (collectively, "the defendants").  The defendants moved to dismiss the action arguing that they are not liable to repay funds that they did not borrow or guarantee.  *See* R. 25.  Their motion raises a basic question:  Does Bank of America's complaint state viable claims for relief?  For the reasons below, the answer is yes.

## BACKGROUND

For the purposes of the motion to dismiss, the Court takes all factual allegations in the complaint as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Between 2005 and 2008, Bank of America executed multi-million dollar loans to three business entities engaged in real estate development.  *See* R. 21 ¶¶ 20, 21, 22 (naming as the "borrowers" CPX Olympic Building II, LLC, CPX Madison Place Office, LLC, and CPX Tampa Gateway OPAG, LLC).  As part of the loan financing terms, the Bank obtained a guaranty from Corporex Realty, a commercial real estate conglomerate with properties across the United States.  *See id.* ¶¶ 15, 16 (alleging that Corporex Realty had a "national footprint" and "claimed to be one of the leading privately held, vertically-integrated owner/operators of commercial real estate in the country").  Incidentally, Corporex Realty's officers, William P. Butler ("Butler") and Thomas Banta ("Banta"), also owned and controlled the three borrowers.  *Id.* ¶¶ 20, 21, 22 (noting that Butler "and/or Banta" owned and controlled borrowers CPX Olympic Building II, LLC, CPX Madison Place Office, LLC, and CPX Tampa Gateway OPAG, LLC).

The guaranty agreements provided in part that Corporex Realty—the patriarch of the Corporex family of businesses—would repay the borrowers' loans.  *Id.* ¶ 19.  The guarantee agreements also contained assurances that Corporex Realty would not, except in limited

circumstances, "sell, transfer, convey, or assign its assets." *Id.* ¶ 23; *see also* R. 21-1 ¶ 10. And in those limited circumstances, Corporex Realty would notify the Bank if it transferred assets to any Corporex family member in which Butler had a majority ownership interest. *Id.* ¶ 24.

But the guaranties and assurances proved to be illusory. Corporex Realty defaulted on each of the three loans it promised to repay. *Id.* ¶ 26. In response, Bank of America resorted to litigation. In 2011, the Bank first filed suit against Corporex Realty for defaulting on its guarantee obligation for the CPX Madison Place Office, LLC loan. *Id.* ¶ 27. Later that year, the Bank also filed foreclosure actions against each of the borrowers. *Id.* ¶ 28. Of these four proceedings, the Bank remains active only in the two involving the CPX Madison Place Office, LLC loan. *Id.* ¶ 29 (stating that the Bank sold to a third party the rights to maintain foreclosure actions against CPX Olympic Building II, LLC and CPX Tampa Gateway OPAG, LLC).

After the Bank filed its complaints, Corporex Realty began transferring assets to its relatives in the Corporex family—including defendant Corporex Companies—without fair consideration and without informing the Bank. *Id.* ¶ 31. The individuals who allegedly orchestrated the transfers were none other than Butler and Banta, who served as officers, directors, and owners of both Corporex Realty and Corporex Companies. *Id.* ¶¶ 10, 11, 31. The Bank alleges that Corporex Realty quietly disposed of its real property, equity in other companies, cash, and "other assets" in multiple states, including Kentucky. *Id.* ¶¶ 32–33. But the Bank did not specify in its complaint the type of property or parties involved in each transfer. Nor did the Bank identify the exact location of the property or the dates of the transactions. *See id.* Bank of America gave one example of a fraudulent conveyance:

3

Corporex Realty changed the ownership of equity and real estate from one of its affiliates—Corporex Select Service Hotels—to Corporex Companies. *Id.* ¶ 34.

Corporex Realty suffered economically after disposing of its assets without fair consideration and without informing its lender, Bank of America. *See id.* ¶ 4 (noting that Corporex Realty's net worth fell and that its cash reserves shrank). Before long, Corporex Realty found itself teetering on the edge of insolvency. Bank of America claims that Corporex Realty is undercapitalized and unable to repay its multi-million dollar debt to the Bank. *Id.* ¶ 5. As Corporex Realty withered, Corporex Companies emerged from the shadows. Flush with property and other assets transferred from the dying Corporex Realty, Corporex Companies assumed the role of the head of the Corporex family. *Id.* ¶ 17 (claiming that after the transfers, Corporex Companies "usurped the business role of Corporex Realty and is now the primary operating . . . entity in the Corporex real estate empire"). Corporex Companies rose from the ashes of Corporex Realty, and shares its ownership, management, and physical location. *Id.* ¶ 18. In this lawsuit, Bank of America wishes to undo this recent metamorphosis of Corporex Realty into Corporex Companies.

## DISCUSSION

The defendants contend that Bank of America failed to state any claims for relief in its complaint. Accordingly, they move to dismiss all nine counts falling into five categories of claims: fraudulent conveyance, successor liability, fraud by omission, breach of fiduciary duty, and aiding and abetting the commission of torts. *See* R. 25-1 at 9 (moving to dismiss the counts under Federal Rule of Civil Procedure 12(b)(6)). For the reasons below, the defendants succeed in dismissing only some of the counts.

4

I.      **Bank of America's fraudulent conveyance claims do not survive the motion to dismiss.**

The parties first dispute which state's law governs Bank of America's fraudulent conveyance claims, then disagree whether the Bank states a claim for relief under that law. Because Bank of America invokes diversity jurisdiction in its complaint, the choice-of-law rules of Kentucky apply to this dispute. *Nat'l Union Fire Ins. Co. v. Watts*, 963 F.2d 148, 150 (6th Cir. 1992) (holding that federal courts exercising diversity jurisdiction must follow the choice of law principles articulated by the highest court in the state in which they sit).

Bank of America argues that even under Kentucky choice-of-law rules, the question of which law governs a fraudulent conveyance claim is complex. The Bank claims that the answer depends on the common-law origins of the cause of action or the type of property that was fraudulently transferred. Because discovery will reveal important details about the fraudulent conveyances needed to answer the choice-of-law question, the Bank maintains that the choice-of-law dispute is premature. *See* R. 26 at 16. But, as explained below, Kentucky law applies after analyzing the origins of the fraudulent conveyance cause of action, and regardless of what property the defendants allegedly fraudulently conveyed.

A.      **Kentucky law governs based on the historic origins of the fraudulent conveyance cause of action.**

Ordinarily, a choice-of-law-inquiry in Kentucky is straightforward: Kentucky courts apply the Commonwealth's law where they have jurisdiction over the parties, regardless of the roots of the cause of action. *See Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky. 1972) ("The basic law is the law of the forum, which should not be displaced without valid reasons."). Other courts have noted this "egocentric" tendency of Kentucky's choice-of-law rule. *See, e.g.*, *Wallace Hardware Co., Inc. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000);

*Adam v. J.B. Hunt Transp., Inc.*, 130 F.3d 219, 230–31 (6th Cir. 1997), *abrogated on other grounds by Ortiz v. Jordan*, 562 U.S. 180, 184 (2011).  Kentucky courts also apply different choice-of-law rules based on whether a cause of action sounds in contract or tort.  *See, e.g.*, *Mountain Motorsports Paving and Constr. LLC v. Yamaha Motor Corp., U.S.A.*, No. 7:14-cv-76-ART, 2014 WL 5341865, at *3–4 (E.D. Ky. Oct. 20, 2014) (noting that the choice-of-law-inquiry differs based on whether the cause of action sounds in tort or in contract).

Under either approach, Kentucky law governs Bank of America's fraudulent conveyance claims.  If fraudulent conveyance does not have common law origins in tort or contract claims, Kentucky law applies since the parties do not contest jurisdiction.  And if fraudulent conveyance is akin to another common law cause of action, it is more like a tort claim, for which Kentucky applies its own law.  *See Leggett*, 484 S.W.2d at 829 (holding that the Commonwealth's law applies to tort claims if there are "any significant contacts" to the jurisdiction).

But according to Bank of America, the inquiry is not so straightforward.  The Bank argues that fraudulent conveyance is actually a cause of action with origins in contract—not tort law.  R. 26 at 19–20.  In support of its conclusion, the Bank cites to a number of cases from other jurisdictions.  *See id.*  But these cases say nothing about how *Kentucky* treats fraudulent conveyance claims.  The Bank also contends that "no reported Kentucky decision has ever held" that fraudulent conveyances are torts.  *Id.* at 17.  But in *Lillard v. McGee*, the Kentucky Court of Appeals equated a fraudulent conveyance under state statute to common-law fraud.  *See* 4 Ky. (4 Bibb) 165, 166 (1815).  The court established that equity courts could hear a fraudulent conveyance claim because "fraud" was one of the "main pillars" of the jurisdiction of chancery courts.  *Id.*  The court reasoned that the fraudulent conveyance

6

statute was made "in affirmance, not in derogation" of the common law. *Id.* For this reason, the statute preserved the ability of equity courts to hear fraud—and therefore fraudulent conveyance—claims. *Id.* at 166–67.

Fraud is a species of tort in Kentucky. *See, e.g.*, *Commonwealth v. Samaritan Alliance, LLC*, 439 S.W.3d 757, 762 (Ky. Ct. App. 2014) (characterizing fraud as an intentional tort); *City of Science Hill v. Mayes, Sudderth & Etheredge, Inc.*, No. 2003-CA-1903-MR, 2005 WL 1313681, at *7 (Ky. Ct. App. Mar. 15, 2006). These cases support the notion that a claim for fraudulent conveyance at least sounds in tort. So under this analysis, Kentucky law applies to the fraudulent conveyance claims because the defendants are located in Kentucky. *See Leggett*, 484 S.W.2d at 829 (applying Kentucky law to tort claims if there are "any significant contacts" to the jurisdiction).

The answer to the choice-of-law question does not change based on the kind of property that the defendants allegedly conveyed fraudulently. The Bank argues otherwise, claiming that Kentucky courts addressing real property transfers apply the law of the location of the property under the principle of *lex loci sitae*. R. 26 at 17. To support its argument, the Bank points to one Kentucky case applying the *lex loci sitae* rule to a creditor's preference claim. *Id.* at 17–18. A creditor's preference claim, the Bank explains, is "substantially similar" to a fraudulent conveyance claim. *Id.* at 18. For this reason, the laws of each state in which Corporex Realty fraudulently conveyed pieces of real estate apply in this case. *Id.* But Kentucky's highest court has found otherwise. *See Griggs v. Crane's Trustee*, 200 S.W. 317, 318 (Ky. 1918) (holding that a fraudulent conveyance claim has "nothing in common with a preferential conveyance" to a creditor).

7

In any case, Kentucky courts can determine that a particular conveyance was made fraudulently, even if the subject property was located in another state. *See, e.g.*, *Lewis v. Barber*, 49 S.W.2d 328, 328–29 (Ky. 1932) (holding that a son's conveyance to his father of a tract of land in Ohio was fraudulent). And they can even order remedies for unwinding this transfer. *See Becker v. Becker*, 576 S.W.2d 255, 257 (Ky. Ct. App. 1979) (noting that while a Kentucky court could not act to directly convey real property outside the boundaries of the Commonwealth, a court with in personam jurisdiction over a party could compel that party to convey real property in another state (citing *Fall v. Eastin*, 215 U.S. 1 (1909))).

None of the cases that the Bank cites stand for any contrary proposition of law. *See New Domain Oil & Gas Co. v. McKinney*, 221 S.W. 245 (1920) (concluding that the validity of a contract for the sale of land by a minor was governed by the laws of the state in which the land is located); *United States v. Westley*, 7 F. App'x 393, 399 (6th Cir. 2001) (applying Tennessee's fraudulent conveyance law for a fraudulent conveyance of personal—not real— property because the transferor and transferees were residents of Tennessee). Indeed, one case supports applying Kentucky law. *Lykins Enters., Inc. v. Felix*, 2007 WL 4139637, at *5 (Ky. Nov. 21, 2007) (citing *Becker* for the proposition that a Kentucky court may exercise its in personam jurisdiction over the parties to order the transfer of realty located in another state).

As a last-ditch argument to delay determination of which state's law should apply to the fraudulent conveyance claims, Bank of America cites to a law review article. R. 26 at 21–22 (quoting Thomas H. Day, *Solution for Conflict of Laws Governing Fraudulent Transfers: Apply the Law That Was Enacted to Benefit the Creditors*, 48 Bus. Law. 889, 892–95 (1993)). But the article is not binding law. Nor does its contents advise against

applying the law of the forum. *See* Day, 48 Bus. Law. at 910 ("A court can always apply its own law . . . . Such an approach would most likely meet constitutional requirements because the forum would have personal jurisdiction over the debtor or the transferee. It would not be unfair from a constitutional perspective to apply, in effect, the law of the debtor's or the transferee's domicile . . . .").

No matter what kind of property Corporex Realty transferred and where it was located, Kentucky law[1] applies for determining whether the transaction was a fraudulent conveyance.

**B.  Under Kentucky law, Bank of America's fraudulent conveyance claims do not survive the defendants' challenge under Rule 12(b)(6).**

The defendants contend that Bank of America fails to state a claim for relief because it did not plead that it had a favorable judgment or writ of execution. R. 25-1 at 10–11. Specifically, they argue that Bank of America must first establish that it is a creditor entitled to set aside conveyances before it can bring a meritorious fraudulent conveyance action. *Id.* For two reasons, the defendants are correct. Since Bank of America has not demonstrated that it is a creditor entitled to any payment, its fraudulent conveyance claims must be dismissed without prejudice.

First, Kentucky law has long held that a fraudulent conveyance plaintiff must possess a judgment and a return of *nulla bona*, or an attachment authorized under Kentucky law. *See Kyle v. O'Neil*, 10 S.W. 275, 276 (Ky. 1889) ("It has long been the rule that actions to annul voluntary conveyances, and those made to defraud creditors, cannot be maintained without

---

[1] Kentucky recently enacted the Uniform Voidable Transactions Act ("UVTA"). *See* An Act Relating to Fraudulent Transfers, S.B. 204, 2015 Gen. Assemb., Reg. Sess. (Ky. 2015). This statute repealed the fraudulent conveyance provisions at issue in this litigation. However, the UVTA does not apply to transfers made before its effective date

9

first having judgment, and a return of "No Property."); *id.* ("In order, however, to give a more speedy remedy, the Code authorizes the creditor to proceed in the first instance . . . by suing out an attachment."); *see also* Black's Law Dictionary 1235 (10th ed. 2014) (defining "nulla bona" as "no goods" and explaining that the term means that the judgment debtor does not have seizable property within the jurisdiction). The requirements prevent third party recipients of voluntary transfers from becoming unnecessarily involved in litigation between a debtor and creditor. *Id.* Bank of America does not claim that it has a judgment or that it obtained an attachment.

Although Kentucky somewhat modified these requirements for bringing a fraudulent conveyance action, Bank of America's claims are still insufficient to obtain relief. A Kentucky statute specifically allows plaintiffs to set aside a fraudulent conveyance of real property without first obtaining a judgment. *See* Ky. Rev. Stat. § 378.030; *see also Pope v. Cawood*, 170 S.W.2d 55, 58 (1943) ("[A] lien is created, without further action, by the filing of a petition charging that real property has been fraudulently conveyed."). But that statute still requires the plaintiff to describe the property in question to state a claim for relief. Ky. Rev. Stat. § 378.030; *see also Citizens Bank & Trust Co. v. McEuen*, 134 S.W.2d 1012, 1013 (Ky. 1939) (interpreting the statute to require a plaintiff to allege facts constituting fraud and to describe the property conveyed). Bank of America did not identify any parcels of property in its complaint, and so has not stated a claim under Ky. Rev. Stat. § 378.030 for fraudulent conveyance.

---

of January 1, 2016. Accordingly, the opinion exclusively discusses the pre-UVTA statutes governing fraudulent conveyances in Kentucky.

The Bank fares no better with any fraudulent conveyance claims related to personal property. Another Kentucky statute allows plaintiffs to combine an action for a judgment establishing liability and an action for fraudulent conveyance. *See* Ky. Civ. R. § 18.02 ("[A] plaintiff may state a claim for money and a claim to have set aside a conveyance fraudulent as to him, without first having obtained a judgment establishing the claim for money."). Accordingly, the provision changes the common-law rule requiring a plaintiff to obtain a judgment before bringing an action to set aside a conveyance as fraudulent. *Cf.* Fed. R. Civ. P. 18(b) Advisory Comm. Notes (holding that an analogous federal rule of civil procedure changed the established law requiring a prior judgment before bringing an action for fraudulent conveyance). But even under Ky. Civ. R. § 18.02, Bank of America does not state claims for fraudulent conveyance. Bank of America does not ask for a finding that Corporex Realty was a debtor that owed money on a contract. Indeed, Corporex Realty is not a party to this lawsuit. So there is no way to "issue a judgment establishing the claim for money" in this litigation that can be satisfied by setting aside fraudulent transfers.

Second, the plain language of Kentucky's fraudulent conveyance statutes requires the Bank to show it obtained a judgment against Corporex Realty. The statutes render void conveyances by a debtor as they relate to a creditor. *See* Ky. Rev. Stat. §§ 378.010, 378.020. Bank of America claims that it is a creditor in this case "by virtue of the Guaranties." R. 21 ¶ 82. But whether the parties are in a debtor-creditor relationship is a legal conclusion. The Court need not accept as true the Bank's legal conclusions in its complaint for the purposes of a motion to dismiss. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir.2014) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir.2010)). Bank of America does not even plead that it is legally a creditor by virtue of a judgment by a court. So the Bank

11

does not state facts that, when taken as true, suggest that it is entitled to relief under Kentucky's fraudulent conveyance statutes.

Bank of America's claims for fraudulent conveyance in this case are incomplete. But the Bank is already seeking a judgment against Corporex Realty in a separate action. *See Bank of America, N.A., v. CPX Madison Place Office, L.L.C.*, Civ. No. 2:11-cv-00168-DLB-JGW (E.D. Ky. Aug. 23, 2011). So its fraudulent conveyance claims may simply be premature. A plaintiff's premature claim may be dismissed without prejudice. *See Schy v. Susquehanna Corp.*, 419 F.2d 1112, 1115 (7th Cir. 1970); *see also CNH Am. LLC v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW)*, 645 F.3d 785 (6th Cir. 2011) ("Ordinarily, if a district court grants a defendant's 12(b)(6) motion, the court will dismiss the claim without prejudice . . . ."). Accordingly, the Bank's fraudulent conveyance claims should be dismissed without prejudice for failure to state a claim under Kentucky law.

## II.   Bank of America states a claim for successor liability under Kentucky law.

Under Kentucky law, a corporation purchasing a seller corporation's assets is generally not liable for the debts or liabilities of the seller corporation. *See Pearson ex rel. Trent v. Nat'l Feeding Sys., Inc.*, 90 S.W.3d 46, 49 (Ky. 2002). That rule has four exceptions. A purchaser corporation can assume the debts and liabilities of a seller corporation (1) by agreement; (2) where the transaction amounts to a consolidation or merger; (3) where the purchasing corporation is merely a continuation of the selling corporation, or (4) where the transaction is entered into fraudulently to escape liability. *Id.* If one of those four exceptions applies, the purchaser, known as the "successor corporation," is liable for the debts and liabilities of its predecessor. This is the theory of successor

liability.  Bank of America claims that these exceptions describe how Corporex Companies came to the forefront of the Corporex empire.  On this basis, the Bank seeks a declaratory judgment that Corporex Companies is a successor to Corporex Realty, liable for all its unpaid obligations.  *See* R. 21 ¶¶ 66–77.

The defendants challenge the Bank's claim of successor liability on one, limited ground.  According to the defendants, successor liability is only appropriate where the predecessor corporation is no longer viable.  Because Corporex Realty has not completely been dissolved or filed for bankruptcy, the defendants maintain that Corporex Companies cannot yet be deemed its "successor."  R. 25-1 at 11–12.  The defendants do not identify a Kentucky or Sixth Circuit case holding that the insolvency or dissolution of the predecessor corporation is a *sine qua non* of successor liability.

Indeed, the defendants cite to a Sixth Circuit case, *Excel Energy, Inc. v. Cannelton Sales Co.*, 337 F. App'x 480, 486 (6th Cir. 2009), that rejected their argument.  The *Excel Energy* court found that a predecessor's viability need not torpedo a claim for successor liability under Kentucky law.  *Id.* (holding that whether the predecessor corporation remains viable "is not . . . a factor that Kentucky courts have endorsed" in resolving a claim for successor liability under the mere-continuation exception); *see also Bowden v. Delta T. Corp.*, No. 06-345-JBC, 2006 WL 3412307, at *4 (E.D. Ky. Nov. 27, 2006) (holding that a fraudulent conveyance theory of successor liability was "not barred by [predecessor's] continued existence").  As a result, and because the defendants make no other argument regarding successor liability, the successor liability claim survives the motion to dismiss.

### III.   Bank of America does not plead facts to satisfy all the elements of a claim for fraud by omission under Kentucky law.

To prevail on a fraud-by-omission claim, Bank of America must prove: (1) the defendants had a duty to disclose a material fact; (2) the defendants failed to disclose the fact; (3) the defendants' failure to disclose the material fact induced the Bank to act; and (4) the plaintiff suffered actual damages as a consequence. *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011). Because the Bank has not included sufficient facts showing that it was induced to act in a detrimental manner, this claim must be dismissed.

Bank of America claims to have experienced only one consequence of Corporex Company's fraudulent omissions. R. 21 ¶ 76. Specifically, the Bank contends that it relied on omissions by "not taking immediate legal steps to enjoin or unwind the transfers or otherwise protect its interests." *Id*. But in order to succeed on its fraudulent omission claim, the Bank must show that it was somehow *induced* to act. Bank of America only pled that it *failed* to act as a result of the fraudulent omissions. As a matter of common sense and plain language, the facts in the complaint do not satisfy the third element of fraudulent omission.

The Bank nevertheless argues that it can obtain legal relief on its claim, even though it admits that its conduct amounts to a failure to act. To support its counterintuitive reading of the word "induce," Bank of America points to an unpublished Kentucky court of appeals decision. *See* R. 26 at 12 (citing to *Pal Oil, LLC v. United Am. Energy, LLC*, No. 2011-CA-000744-MR, 2012 WL 5274652, at *29 (Ky. Ct. App. Oct. 26, 2012)). The *Pal Oil* court mentioned that the "inducement" element of a fraudulent omission claim includes decisions to "refrain from acting." 2012 WL 5274652, at *29.

14

*Pal Oil* does not counsel changing the fraudulent omission cause of action in Kentucky. While the Court can predict how the highest state court may rule on an unsettled legal issue, doing so based on *Pal Oil* is not appropriate for three reasons. *See Melson v. Prime Ins. Syndicate*, 429 F.3d 633, 636 (6th Cir. 2005) (concluding that if state law is unsettled, a federal court can anticipate how the state's supreme court would rule on the issue). First, the Kentucky Supreme Court is clear that a plaintiff must be induced to act by a fraudulent omission; so there is no "unsettled" area of law. *See Giddings*, 348 S.W.3d at 747. Second, to the extent that the highest Kentucky court has not addressed the issue, the decisions of the state's intermediate courts carry persuasive weight. *See id.*; *see also Payne v. Novartis Pharm. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014); *Lukas v. McPeak*, 730 F.3d 635, 637-38 (6th Cir. 2013) (instructing courts to look to the holdings of appellate decisions). But there is no court of appeals decision or holding challenging *Giddings*' interpretation of fraudulent omission. *Pal Oil* did not determine whether a plaintiff can bring a claim after failing to act as a result of a fraudulent omission. Instead, the court reversed and remanded the finding of fraud because there was insufficient evidence of intentional fraud and reliance. *See* 2012 WL 5274652, at *29–36. The dicta in *Pal Oil* cannot support a finding that the Kentucky Supreme Court will expand liability under the fraudulent omission cause of action. *See Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995) (permitting federal courts to consider only the decisions of intermediate courts of appeal and the dicta of state supreme court opinions in resolving unsettled state law). Finally, any prediction on this issue should avoid expanding liability under state law. Finding defendants liable for fraudulent omissions where plaintiffs are either induced to act or fail to act will do just that. *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004) ("Furthermore, [w]hen

given a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability, we should choose the narrower and more reasonable path.").

Kentucky could have a policy justification for limiting fraudulent omission claims to only those plaintiffs who were induced to act by a defendant's fraudulent omission. Accordingly, there is no reason to expand the scope of this cause of action by announcing a new interpretation of its elements, absent any cues from the Kentucky Supreme Court. For this reason, Bank of America cannot proceed on its fraudulent omission claim by simply pleading that it failed to act as a result of the defendants' fraudulent omissions.

## IV.    Bank of America's claim for breach of fiduciary duty survives a motion to dismiss under Rule 12(b)(6).

The defendants move to dismiss the breach of fiduciary duty claims against Butler and Banta. The defendants argue that Butler and Banta did not owe such a duty to the Bank under Kentucky law. *See* R. 25-1 at 15–16 (arguing that there is no relationship between any of the defendants and the Bank that would give rise to a fiduciary duty). In support of this claim, the defendants cite to one Kentucky statute. R. 25-1 at 15 (referring to Ky. Rev. Stat. § 271B.8-330(1)). That statute provides that corporate directors who improperly transfer assets are liable to the corporation. *See* Ky. Rev. Stat. § 271B.8-330(1). The statute does not say, one way or another, whether corporate officers of an insolvent business owe a duty to the corporation's creditors, as Bank of America alleges. *See* R. 26 at 14.

A line of Kentucky cases indicates that corporate officers owe duties to a corporation's creditors in some circumstances. *See Enter. Foundry & Mach. Works v. Miners' Elkhorn Coal Co.*, 45 S.W.2d 470, 474 (Ky. 1931); ("[D]irectors of [a] corporation .

16

. . assume[] the discharge of certain duties not only to the company, but to persons dealing with it, and that if they misappropriated the funds intrusted to their control, and a creditor was damaged by the act, [the creditor] had a right of action against them for the injury resulting from their illegal conduct.") (quoting *United Soc'y of Shakers v. Underwood*, 72 Ky. (9 Bush) 609, 618 (Ky. 1873)); *Blake v. Ray*, 62 S.W. 531, 535 (1901) (noting the longstanding rule in Kentucky that a director of an insolvent corporation is a fiduciary of the corporation's creditors); *see also Underwood*, 72 Ky. (9 Bush) at 617–18 (holding that if corporate officers fail either to act with diligence or in good faith, "they violate a duty they owe not only to the stockholders, but to the creditors . . . of the corporation").

Bank of America argues that these cases establish that directors of an insolvent corporation—like Corporex Realty—owe a fiduciary duty to creditors—like the Bank. R. 26 at 13. And the Bank alleges that duty was triggered when Butler and Banta improperly transferred property away from Corporex Realty at a time when Corporex was moving toward insolvency and owed money to the Bank. *See* R. 26 at 15. The defendants have not cited authority that calls into question the duty of corporate officers to creditors during insolvency. Rather, they rely on two cases that do not support their argument. *See* R. 25-1 at 16 (citing *Bank of Am., N.A. v. Corporex Realty & Inv., LLC*, 875 F. Supp. 2d 689, 704–06 (E.D. Ky. 2012)); R. 28 at 12 (citing *Re Penick*, 149 F.3d 1184, at *4 (6th Cir. 1998)). The *Corporex Realty* court simply found that a bank does not owe a fiduciary duty to customers or debtors. *See* 875 F. Supp. 2d at 704. That is distinct from the duty alleged here—from an officer of an insolvent corporation to a creditor. And the *Penick* court concluded that under Kentucky law, an insolvent corporation owes fiduciary duties to its creditors. 149 F.3d at *4.

Without binding, contrary authority from the defendants, the Bank states a claim for relief for breach of fiduciary duty at least for the purposes of a motion to dismiss.

**V.     None of Bank of America's claims that Butler and Banta aided and abetted the commission of torts survives the motion to dismiss.**

Bank of America states three claims against Butler and Banta for "aiding and abetting" various torts.  *See* R. 21 ¶¶ 108–15 (Aiding and abetting fraudulent conveyance and fraud by omission); ¶¶ 123–26 (Aiding and abetting breach of fiduciary duty).   The defendants moved to dismiss those claims under multiple theories.  *See* R. 25-1 at 14–16. Because they succeed on one theory for each of the claims, the Bank's aiding and abetting counts must be dismissed.

The Bank first pled that Butler and Banta aided and abetted fraudulent conveyances between Corporex Realty and Corporex Companies.  R. 21 ¶¶ 108–15.  But nowhere in the complaint does Bank of America claim that Butler and Banta received any fraudulent conveyances.  Under these circumstances, the governing law is clear.   While the highest Kentucky court is silent on this point, Kentucky law does not allow suit against a non-party to a fraudulent conveyance.  *CNH Capital Am. LLC v. Hunt Tractor, Inc.*, 568 F. App'x 461, 470 (6th Cir. 2014) ("The Kentucky statutes for fraudulent conveyances only allow recovery for a fraudulent conveyance from a transferor or transferee."); *see also GATX Corp. v. Addington*, 879 F. Supp. 2d 633, 642 (E.D. Ky. 2012); *Princesse D'Isenbourg et Cie, Ltd. v. Kinder Caviar, Inc.*, No. 3:12–cv–4–DCR, 2013 WL 147841, at *6 (E.D. Ky. Jan. 14, 2013). Indeed, the Sixth Circuit reasoned that the Kentucky legislature "has specifically chosen not to adopt" laws that would allow suits against beneficiaries of a fraudulent conveyance.  *Id.* Because non-parties to the conveyance cannot be directly liable for a fraudulent conveyance,

18

the Sixth Circuit determined that they cannot be held indirectly liable either. *Id.* at 473.  The *CNH* court concluded that it would not make sense to recover from parties for performing a tort they "could not commit as a matter of law." *Id.*  The circuit court's holding about Kentucky law counsels in favor of finding that there is no cause of action for aiding and abetting a fraudulent conveyance.

Neither can Bank of America succeed on its claim that Butler and Banta aided and abetted the Corporex entities in making fraudulent omissions.  As determined *supra*, the Bank did not state facts that suggested it had a plausible claim for fraudulent omission.  The Bank does not argue how its aiding and abetting claims for fraudulent omission can survive even if the underlying tort claims fail.  Indeed, its aiding and abetting claim is simply derivative of the underlying tort.  *See* R. 21 ¶ 112 ("Defendants also aided and abetted Corporex Realty and/or Corporex Companies as successor in the . . . fraud by omission as described above.").  Accordingly, the Bank's claims against Butler and Banta for aiding and abetting fraudulent omissions do not survive the motion to dismiss.

Finally, the Bank argues that it can bring a viable claim for aiding and abetting a breach of fiduciary duty as a matter of Kentucky law.  *See* R. 26 at 15 (quoting *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 486 (Ky. 1991)).  However, the Bank does not plead any facts to suggest that Butler and Banta act to aid each other in committing a breach of fiduciary duty.  Rather, the Bank pleads that Butler and Banta "knowingly gave substantial assistance or encouragement" to the other in "carrying out their tortious and unlawful acts as part of a common design."  *See* R. 21 ¶¶ 125, 126.  These statements are not facts but rather legal conclusions that parrot the elements of the offense.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (explaining that on a motion to dismiss, courts need not "accept as true

a legal conclusion couched as a factual allegation").  Neither does the Bank explain how an individual's breach of a fiduciary duty can, on its own, aid or abet another officer's breach. *See* R. 26 ¶¶ 31–34 (pointing to facts that indicate that Butler and Banta individually breached a fiduciary duty to the Bank by transferring assets away from Corporex Realty).  So while the Bank states a claim for breach of fiduciary duty against Butler and Banta, it does not state claims for aiding and abetting that breach.

**CONCLUSION**

Because Bank of America pleads claims for relief under Kentucky law, the defendants do not automatically prevail at this stage of the litigation.  But like in a game of Monopoly, they will have additional turns.  In the upcoming rounds, they may adjudicate the merits of the Bank's claims for relief.  For now, both parties may, so to speak, roll the dice to move past the motion to dismiss stage and into discovery.  Accordingly, the defendants' motion to dismiss the complaint under Rule 12(b)(6), R. 25, is **GRANTED IN PART** and **DENIED IN PART**.

This the 15th day of April, 2015.

Signed By:

*Amul R. Thapar*

United States District Judge