UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., successor by merger to LASALLE BANK, NATIONAL ASSOCIATION, | : : : : | Civil Action No. 2:14-cv-00165-ART-JGW |
| Plaintiff, | : : | Judge Amul R. Thapar |
| vs. | : : : | Magistrate J. Gregory Wehrmann |
| CORPOREX COMPANIES, LLC, *et al.*, | : : | **RESPONSE IN OPPOSITION TO THE MOTION FOR LEAVE TO FILE AMENDED COMPLAINT** |
| Defendants. | : | |

This matter is before the Court upon the motion filed by Plaintiff Bank of America, N.A. to file a second amended complaint. At its core, the Bank's proposed pleading adds one more claim to the two currently pending before this Court. The included counts as follows:

    I. successor liability against Corporex Companies, LLC;

    II. alter ego liability against Corporex Companies, LLC; and

    III. fiduciary duty breaches against individual defendants William P. Butler and Thomas E. Banta.

While Count II is new, the allegations made in it fail to state a claim under Kentucky law. Nor do Plaintiffs offer a reason why their alter ego theory could not have been presented with its original complaint filed in North Carolina nearly two years ago, or why the filing of it today will not prejudice Defendants. Finally, Count III is merely reasserted, even though it is now clear that the Bank has no claim against Butler or Banta for breach of any duty under Kentucky law. This Court should deny the Bank's motion.[1]

---

[1] In its motion, the Bank also requests additional time to add new claims and new parties. (Doc. No. 59 at 2). There is no reason—let along the good cause required under Fed. R. Civ. P. 15(a)—to give Plaintiffs yet more time to test out even more newly discovered theories. *Boggs v. 3M Co.*, CIV. 11-57-ART, 2012 WL 3644967, at *8 (E.D. Ky. Aug. 24, 2012) aff'd, 527 Fed. Appx. 415 (6th Cir. 2013).

13494288.1

**APPLICABLE LEGAL STANDARDS**

When a party seeks to amend under Fed.R.Civ.P. 15(a) with a pleading that fails to state a claim, the standard is that for a Rule 12(b)(6) motion to dismiss. It is "well-settled that a 'trial court may appropriately assess the legal sufficiency of a contemplated amendment in considering the propriety of granting leave to amend under Fed.R.Civ.P. 15(a) and deny the motion if amendment would be futile.'" *Gibson v. Mortg. Elec. Registration Sys.*, 2012 WL 1601313 at *3, 2012 U.S. Dist. LEXIS 63510 (W.D.Tenn. May 7, 2012). *See also Kindle Bldg. Co. v. Ford Motor Co.*, 17 F.Supp.2d 701, 705 (N.D.Ohio July 2, 1997). "A proposed amended pleading is futile if the amended pleading would not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Gibson*, 2012 WL 1601313 at *3; *Clough v. State Farm Mut. Auto Ins. Co.*, 2014 U.S. Dist. LEXIS 41642, 29 (W.D.Tenn. March 28, 2014).

Leave to amend should be "freely given" only "when justice so requires." Fed.R.Civ.P. 15(a)(2), and not "simply upon a party's motion." *Johnson v. Ventra Group, Inc.*, 124 F.3d 197, 1997 WL 468332 at *2 (6th Cir. 1997). Further, "justice does not require amended pleadings if there has been undue delay, bad faith, dilative motive, or repeated failure to cure the deficiency by amendments previously allowed." *Id.*; *see also Foman v. Davis*, 371 U.S. 178, 182 (U.S. 196). Though ordinary delay does not alone justify denying leave to amend, "[a]t some point . . . 'delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party.'" *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002). When "amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 459 (6th Cir. 2001). The granting or denying of leave to amend is well within the discretion of the District Court. *Foman*, 371 U.S. at 182.

**FACTS**

In 2006, Corporex Realty entered into an agreement with LaSalle Bank, predecessor-in-interest to Bank of America, to guarantee a loan on the Corporex Madison Place Office Tower in Covington, Kentucky. In the guaranty, the parties agreed to an $85 million "Minimum Current Value Net Worth" that Corporex Realty was to maintain throughout the term of the guaranty. Proposed Second Amended Complaint (Doc. No. 59-2), Exh. B, ¶23.

The Bank now complains of several actions that Corporex Realty took while operating during the worst economic times the country has encountered since the 1930s. Specifically, the Bank complains that, over the course of the last several years, transfers of interests in certain real estate assets and liabilities associated with them have reduced the Corporex Realty's Current Value Net Worth to only $95 million. *Id.*, ¶2. Beyond that, the pleading is schizophrenic – mostly complaining that assets moved from Corporex Realty to its parent Corporex Companies, *see, e.g.*, *id.*, ¶¶ 32 ("Defendants began orchestrating the transfer of assets out of Corporex Realty without an exchange of fair consideration"), 35 ("Corporex Realty transferred ownership of 21 entities from 2011 to 2014"), 36-37 – but other times insisting that it was Corporex Companies that provided assistance to Corporex Realty, rather than *vice versa*. *See, e.g., id.*, ¶¶ 62 ("By the end of 2014, Corporex Companies had assumed significant liabilities of Corporex Realty"), 63 ("A significant reason why Corporex Realty has not yet collapsed is the financial support and/or assumption and payment of liabilities from Corporex Companies"). And, the Bank complains that other lenders negotiated refinancing of their loans with Corporex Realty in which they received a guaranty from Corporex Companies, Corporex Realty's parent, but the Bank did not. *Id.,* ¶75.

Tellingly, the Bank fails to state any reason why it asks this Court to allow the filing of this Motion, which comes more than twenty-one (21) months after the Bank filed its claims against these same defendants in North Carolina,[2] one year after the Bank filed its complaint with this Court (Doc. No. 1), eleven months after the Bank filed its Amended Complaint with this Court (Doc. No. 21), and on the deadline this Court set to amend pleadings. (Doc. No. 37).

## ANALYSIS

**1. The Bank does not plead a claim for alter ego liability.**

This Court, like other Kentucky courts, has been reluctant to pierce the corporate veil. *Weingartner Lumber & Supply Co. v. Kadant Co., LLC,* 2010 WL 996473 at *6 (E.D. Ky. Mar. 16, 2010); *see also Schultz v. General Elec. Healthcare Financial Services Inc.*, 360 S.W.3d 171, 174 (Ky. 2012) ("a court will disturb the legal fiction of corporate separateness only in the rarest of circumstances"); *Morgan v. O'Neil*, 652 S.W.2d 83, 85 (Ky. 1983) ("Holding a shareholder in a corporation individually liable for a corporate debt is an extraordinary procedure and should be done only when the strict requirements for imposing individual liability are met"); *Southeast Texas Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 681 (6th Cir. 2006) (only "extraordinary circumstances" warrant piercing the corporate veil).

Here, the Bank seeks to avoid that "limited liability which is the hallmark of a corporation" under an "alter ego" theory. *Inter-Tel Techs, Inc. v. Linn Station Properties, LLC*, 360 S.W.3d 152, 155 (Ky. 2012). To do so under Kentucky law, the Bank must allege facts sufficient to establish two separate elements: "(1) domination of the corporation resulting in a loss of corporate separateness *and* (2) circumstances under which continued recognition of the

---

[2] *Bank of America, N.A. v. Corporex Companies, LLC, et al.,* United States District Court for the Western District of North Carolina Case No. 3:13-cv-00691-RJC-DSC.

4

13494288.1

corporation would sanction fraud or promote injustice." *Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC*, 360 S.W.3d 152, 165 (Ky. 2012)(emphasis in original).

The first element pertains to the relationship between the two corporations and Bank must set forth facts showing that Corporex Companies exercised domination over Corporex Realty "that resulted in a loss of corporate separateness." *Inter-Tel Techs, Inc.*, 360 S.W.3d at 155. The allegations must demonstrate that Corporex Companies and Corporex Realty are "so close that they are essentially the same entity." *Weingartner Lumber & Supply Co. v. Kadant Co., LLC*, 2010 WL 9964732010 at *6 (E.D.Ky. March 16, 2010). But, even if the first element has been appropriately pled, the Bank must also set forth facts that satisfy the second element, namely that continued recognition of Corporex Realty as a separate entity would perpetuate fraud or promote injustice. Those allegations "must be something beyond the mere inability to collect a debt from the corporation." *Inter-Tel Techs, Inc.*, 360 S.W.3d at 165. Here, even accepting each well-pled allegation as true, the Bank is unable to satisfy either element required to meet the high burden recognized by this Court that would allow the Bank to pierce the corporate veil under an alter ego theory.

> **a. The Bank's fails to allege facts that Corporex Companies exercised domination over Corporex Realty that resulted in a loss of corporate separateness.**

In *Inter-Tel Technologies*, the Kentucky Supreme Court outlined eleven different factors that courts consider in determining the first element of the alter ego test – complete dominion and control of one corporation by another so as to result in a loss of corporate separateness between the two. *Inter-Tel Techs, Inc.*, 360 S.W.3d 152 at 163-64. Kentucky courts consistently identify three of those factors as most critical:

- Grossly inadequate capitalization;

5

- Egregious failure to observe legal formalities and disregard distinctions between the corporations; and

- A high degree of control by the parent over operations and decisions of the subsidiary, particularly day-to-day.

*Inter-Tel Techs, Inc.*, 360 S.W.3d at 164; *see also Weingartner Lumber,* 2010 WL 996473 at *5; *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993). Of these three, the third element will almost always be present between a parent corporation and a wholly owned subsidiary and is therefore inconsequential. On the other two, the Bank does not and cannot allege the requisite facts. Taken together, the Bank cannot plead "enough facts to allow the court to draw the reasonable inference that the defendants are liable for the alleged misconduct." *Arapahoe Resources, LLC v. Professional Land Resources, LLC*, 2015 WL 4887321 at *3 (E.D. Ky. Aug. 17, 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Application of the three most critical factors, along with the other factors listed in *Inter-Tel Technologies*, all of which are discussed in turn below, are fatal to the Bank's Motion.

**(1)** ***Does the subsidiary have grossly inadequate capitalization?*** **No.** Regarding capitalization, the issue is not whether the subsidiary has enough capital to meet its obligations but rather whether the subsidiary was ***grossly*** undercapitalized. *See, e.g., Inter-Tel Techs, Inc.*, 360 S.W.3d at 167 (subsidiary corporation in question had "grossly inadequate capital for day-to-day operations because it had no funds at all, literally nothing of its own"); *Southeast Texas Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 675-76 (6th Cir. 2006) (Delaware and Tennessee law) ("whether the corporation was grossly undercapitalized").

When the parties here negotiated the terms of the guaranty, they specifically addressed the subject of Corporex Realty's capitalization. They negotiated and agreed upon a measure of capitalization and a level of capitalization that Corporex Realty was to maintain. Paragraph 23

6

13494288.1

of each guaranty that the Bank has attached to its Proposed Second Amended Complaint includes the same minimum level of capitalization and manner in which it is to be determined:

> <u>Financial Covenants</u>.  At all times while any portion of the Loan remains outstanding, Guarantor shall maintain … a ***Minimum Current Value New Worth*** (as defined below) of Eighty-Five Million Dollars (***$85,000,000***) . . .  "Minimum Current Value Net Worth" means stockholder's equity as determined in accordance with generally accepted accounting principles (except that real property assets shall be deemed to be worth their current valuation at the time of such determination as reasonably and objectively determined from time to time by Guarantor's management) from Guarantor's current value financial statements in conformity with Guarantor's historical practices as previously demonstrated to Lender.
>
> Guaranty of Payment, ¶23, Proposed Second Amended Complaint (Doc. No. 59-2), Exh. A (emphasis added).

In its proposed pleading, the Bank complains that Corporex Realty's Minimum Current Value Net Worth "has fallen to $95 million."  *Id.*, ¶4.  But that is ***above*** the minimum level of capitalization that the Bank agreed to.  The Bank simply cannot argue that Corporex Realty is undercapitalized – let alone grossly so.

The Sixth Circuit recently addressed whether a defendant's falling below a minimum capitalization provision agreed upon in its lease agreement with the plaintiff established gross undercapitalization.  *Southeast Texas Inns, Inc.,* 462 F.3d at 681.  There, the court found that, despite defendant's failure to maintain the agreed-upon capitalization level, the plaintiff had failed to adequately allege undercapitalization for purposes of alter ego liability.  *Id.*  Here, the facts are dramatically different.  At no point in time has Corporex Realty fallen below its agreed-upon capitalization level with the Bank.  Accordingly, the Bank simply cannot establish gross undercapitalization.

7

13494288.1

**(2)** *Is there an egregious failure to observe legal formalities and disregard the distinctions between parent and subsidiary?* **No.** The Bank fares no better when it comes to corporate formalities. The Bank does not and cannot allege that Corporex Realty has failed to observe and maintain the corporate structure, filings and records required under Kentucky law.[3] It does, and there is no allegation to the contrary. And the Proposed Second Amended Complaint, like its predecessors, is replete with references to the formal corporate transactions that have taken place between Corporex Companies and Corporex Realty. *See, e.g.*, Proposed Second Amended Complaint (Doc. No. 59-2), ¶¶ 33-36 (allegations concerning transfers), 44-53 (allegations concerning other lenders' recognition of transfers and transactions entered into between those lenders, Corporex Realty, and Corporex Companies as separate entities).

**(3)** *High degree of control.* **Yes.** While the Bank alleges that Corporex Companies owned Corporex Realty and that it had the ability to control Corporex Realty, that fact alone cannot form the basis for piercing the corporate veil. *See Poyner v. Lear Siegler, Inc.*, 542 F.2d 955, 958 (6th Cir. 1976) ("Ownership and control of a corporate entity by the persons sought to be held individually liable is necessary but not sufficient by itself for denial of entity treatment"); *Johnson v. Diamond Shine, Inc.*, 890 F. Supp. 2d 763, 774 (W.D. Ky. 2012) ("Plaintiff's bald assertions of unity of ownership and interest and his skepticism of whether the formalities of corporate existence were observed are insufficient to state a claim"). If it could, every single-member LLC could be disregarded.

---

[3] One of the advantages of an LLC structure is that it does not have corporate requirements such as annual shareholder meetings, board elections, and the like. It is required to have filings with the Kentucky Secretary of State, whose website demonstrates that Corporex Realty is and remains properly qualified to do business in Kentucky. Available at: https://app.sos.ky.gov/ftsearch/

8

13494288.1

**(4)** *Does the parent own all or most of the stock of the subsidiary?* **Yes**.  Defendants agree that Corporex Realty is a single-member LLC whose sole member is Corporex Companies.  This factor is obviously not dispositive since this is true of every corporate parent/subsidiary.

**(5)** *Did the parent corporation subscribe to all of the capital stock of the subsidiary or otherwise cause its incorporation?*  **No.**  While Corporex Realty is a single-member LLC whose sole member is Corporex Companies, there is no allegation in the Proposed Second Amended Complaint about Corporex Companies' having caused the incorporation of Corporex Realty – nor could there be.  As Kentucky Secretary of State records show, Corporex Realty came into existence *before* Corporex Companies.[4]

**(6)** *Do the parent and subsidiary corporations have common directors or officers?*  **Yes**. William P. Butler and Thomas E. Banta are directors and officers of both Corporex Realty and Corporex Companies.  *Id*., ¶¶ 11, 12.

**(7)** *Does the parent corporation finance the subsidiary?*  **No.**  The Bank makes the bald assertion that "Corporex Companies has financed Corporex Realty through direct loans, assumption of debts, payment of debts and equity infusions." *Id.*, ¶74.  Yet that conclusory allegation stands in stark contrast to the claims that are at the heart of this lawsuit – assets flowing in the opposite direction from subsidiary to parent.  *Id.,* ¶33-36, 44-53.  Financing flowing from parent to subsidiary simply cannot be established based on the Bank's proposed pleading.

**(8)** *Does the parent pay the salaries and other expenses or losses of the subsidiary?*  **No.**  There is no allegation made about payment of salaries, expenses or losses – those words

---

[4] As reflected in the filings with the Kentucky Secretary of State, Corporex Realty was first formed, as a C-corporation named W. P. Butler Company, in 1967.  In 1996, that corporation became Corporex Realty & Investment Corporation.  In 2002, it merged into Corporex Realty & Investment I, LLC, which changed its name to Corporex Realty& Investment, LLC.

13494288.1

nowhere appear in the Proposed Second Amended Complaint. And, as with financing of the subsidiary – the allegations are that assets moved in both directions.

**(9)** *Does the subsidiary do no business except with the parent or does the subsidiary have no assets except those conveyed to it by the parent?*  **No.**  The proposed pleading acknowledges that Corporex Realty remains a separate entity that operates independently from Corporex Companies.  *See, e.g., id.*, ¶¶38, 63.  Nothing in the allegations asserts that Corporex Realty has no assets except those conveyed to it by Corporex Companies.  In fact, as discussed above, the Bank claims exactly the opposite – that assets were conveyed in the opposite direction.

**(10)** *Is the subsidiary described by the parent (in papers or statements) as a department or division of the parent or is the business or financial responsibility of the subsidiary referred to as the parent corporation's own?*  **No.**  The Proposed Second Amended Complaint includes no allegations on this point.

**(11)** *Does the parent use the property of the subsidiary as its own?*  **No.**  Here again, the Bank makes a bald allegation, claiming that Corporex Companies uses Corporex Realty property as its own.  *Id., ¶74.*  Yet the Bank cites no facts to support this claim.  It claims instead that Corporex Realty has *transferred* assets to its parent, Corporex Companies, not that Corporex Companies has used Corporex Realty's assets as its own.  Nothing in the Proposed Second Amended Complaint supports this factor.

**(12)** *Do the directors or executives fail to act independently in the interest of the subsidiary, and do they instead take orders from the parent, and act in the parent's interest?*  **No.**  As with much of what is asserted in its Proposed Second Amended Complaint, the Bank baldly asserts this point.  *Id., ¶74.*  However, it does not cite any facts to support this claim.  And

the allegations go, again, both ways. The Bank would like everyone to believe that transfer of assets from subsidiary to parent would be in the parent's interest. *E.g., id*., ¶¶ 35-36. But the transfer of liabilities from subsidiary to parent would certainly be in the interests of the subsidiary, not the parent. *E.g., id*., ¶ 62 ("By the end of 2014, Corporex Companies had assumed significant liabilities of Corporex Realty"). And so too would be other forms of financial support that the Bank alleges were provided to Corporex Realty by Corporex Companies. *E.g., id*., ¶63 ("A significant reason why Corporex Realty has not yet collapsed is the financial support and/or assumption and payment of liabilities from Corporex Companies"); ¶64 ("Corporex Realty received $12.6 million in direct support from affiliates between 2011 and 2013"). The fact allegations in the Proposed Second Amended Complaint do not support a conclusion that executives of the subsidiary fail to act independently in the interest of the subsidiary.

Taken as a whole, the Bank can establish only one of the three critical *Inter-Tel Technologies* factors and two of the remaining nine factors used to evaluate whether a lack of corporate separateness is present. Although "not all factors are required for a court to find domination," *Arapahoe Resources,* LLC, 2015 WL 4887321 at *5, the Bank's allegations fall far short of those required to prove unity of ownership. On that basis alone, the Bank's motion for leave to amend should be denied.

      b.  **The Bank cannot establish that failure to pierce the corporate veil would sanction fraud or promote injustice.**

The second element Kentucky courts require for alter ego liability is the use of the corporate form to sanction fraud or promote injustice. *Inter-Tel Technologies, Inc.*, 360 S.W.3d at 165; *Southeast Texas Inns,* 462 F.3d at 674. Courts have cited unjust enrichment, evasion of liabilities, and the squirreling away of assets as examples of such injustice. *Id.* at 524.

11

To establish fraud in this context, federal courts require pleading with particularity under Civil Rule 9(b). *Southeast Texas Inns.,* 462 F.3d 666, 672 (6th Cir. 2006) ("When a cause of action seeks to pierce the corporate veil on the basis of fraud, it is subject to FRCP 9(b)") (citations in quotations omitted); *Board of Trustees of Teamsters Local 863 Pension Fund v. Food Town, Inc.,* 296 F.3d 164, 173 n.10 (3d Cir. 2002). One can search the Bank's Proposed Second Amended Complaint in vain for any particulars related to fraud – or any examples of the "additional 'wrong'" required to prove injustice. *Sea-Land Services,* 941 F.2d at 525. The words "fraud" and "injustice" do appear several times in the complaint (fraud or some form of the word four times; injustice once), but always as conclusory allegations:

> Corporex Companies and Corporex Realty entered into their transactions *fraudulently* in order to escape the liabilities of Corporex Realty.
>
> Proposed Second Amended Complaint (Doc. No. 59-2), ¶67.
>
> The continued recognition of Corporex Companies as a separate corporation from Corporex Realty would sanction *fraud* or promote injustice.
>
> *Id.,* ¶75.
>
> The transfers were undertaken with the purpose of *defrauding* Plaintiff and possibly other creditors from collecting the debts owed by Corporex Realty.
>
> *Id*.

It is fundamental that such conclusory allegations are not sufficient to overcome a motion to dismiss. *16630 Southfield Ltd. Partnership v. Flagstar Bank, F.S.B.,* 727 F.3d 502, 504 (6th Cir. 2013) ("a plaintiff cannot overcome a Rule 12(b)(6) motion to dismiss simply by referring to conclusory allegations in the complaint that the defendant violated the law"); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)("a complaint containing

12

a statement of facts that merely creates a suspicion of a cognizable right of action is legally insufficient"). The allegations confirm that the Bank knows how to throw the word "fraud" around, not that it knows what it means.

The only *facts* that the Bank alleges to support this notion of fraud and injustice are buried in Paragraph 75 of its proposed pleading. The Bank starts with another conclusory statement: "Under the circumstances herein alleged, the continued recognition of Corporex Companies as a separate corporation from Corporex Realty would sanction fraud or promote injustice" – the Bank does not seem to know which it is – —and then sets out its support in the next sentence: "The effect of the transfers and other conduct alleged herein was to render Plaintiff's ability to collect on its $34 million judgment difficult or impossible absent the relief requested herein."  Proposed Second Amended Complaint (Doc. No. 59-2), ¶75.  While that allegation is directly contradicted by the supersedeas that has been posted to cover that judgment, the law is clear that such an allegation has nothing to do with the fraud or injustice courts contemplate on an alter ego theory. *Inter-Tel Technologies*, 360 S.W.3d at 165 ("the injustice must be something ***beyond the mere inability to collect a debt*** from the corporation." Emphasis added); *Scarborough v. Perez*, 870 F.2d 1079, 1084 (6th Cir. 1989) ("the corporate veil may not be pierced without a showing of fraud or injustice ***separate and apart from*** the corporation's failure to pay its debt." Emphasis added); *Sea-Land Services, Inc. v. Pepper* Source, 941 F.2d 519, 524 (7th Cir. 1991) (cited on this point by the Kentucky Supreme Court in *Inter-Tel Technologies*) (promotion of injustice "requires some 'wrong' beyond a plaintiff's inability to collect a debt from the failure to pierce the corporate veil").

13

The only other factual statement is the following:

> Fraudulent intent can be inferred by the fact that Corporex Companies and Corporex Realty approached at least five (and possibly every) lender to Corporex Realty and offered replacement and/or substitute guarantees except for Plaintiff.
>
> Proposed Second Amended Complaint (Doc. No. 59-2), ¶75.

Really?  This lawsuit is the sixth separate time that the Bank has dragged anyone associated with its loans to a Corporex entity into a federal court on one or more of its theories of recovery.  By contrast, *every other lender* to a Corporex entity in the summer of 2011 has refinanced and extended their loans and helped carry the company through what was the most difficult period the national real estate market has experienced in our lifetimes.  *See, e.g.*, *id.*, ¶¶45-53.  And the Bank has the audacity to complain that those other lenders got something that was never offered to it?

The evidence will establish in this case that the Bank did agree to a refinancing of its Corporex loans in the spring of 2011 and then changed its mind and filed its first lawsuit June 30, 2011. The fact that other lenders who carried through on their commitments to extend loans did receive guaranties from Corporex Companies while the scorched earth litigator did not is no evidence of fraud or injustice.  It is evidence of good business judgment exercised by those on the Corporex side in difficult and trying circumstances.  The alter ego claim in the Proposed Second Amended Complaint has no basis in the factual allegations.  It would be futile to allow it to be added to this case.

    **2. The Bank offers no reason why it took so long to come up with its new theory nor can the Defendants make up the time lost in discovery.**

Elements of the new theory that the Bank seeks to present in its proposed pleading bears striking similarities to various of the nine different counts that the Bank threw against the wall in

14

its original complaint filed in North Carolina nearly two years ago, *see Bank of America, N.A. v. Corporex Companies, LLC, et al.,* United States District Court for the Western District of North Carolina Case No. 3:13-cv-00691-RJC-DSC, and in its original complaint filed with this Court one year ago. (Doc. No. 1). One might have thought that the Bank would have been creative enough then to come up with this theory. Nothing in what the Bank has filed suggests any reason why its alter ego theory was not obvious to it on the same facts that it presented its other theories of recovery. Indeed, there are few additional facts pled in the complaint to support the new theory – and certainly nothing that would have come as a surprise to the Bank.

While the Bank offers no excuse for its tardiness, the prejudice to Defendants is real. Under Kentucky law, the elements that go into establishing an alter ego theory do differ from those that underlie the claims of successor liability and breach of fiduciary duty claims. Thus, for example, while undercapitalization of the debtor entity is critical in all three, alter ego theory goes beyond that and requires proof of fraud or injustice perpetrated on the creditor. While Defendants do not agree that the Bank has appropriately pled those in its proposed pleading, *see, infra.,* pp. 10-13, were the pleading allowed to be filed, it would be filed near the mid-point of discovery in this case. With an alter ego claim then in the case, Defendants would need have to go back to the starting point on discovery related to representations made and reasonable reliance upon those representations by the Bank – fundamental elements of the fraud the Bank would have to establish. That would entail new interrogatories and document requests, time for the Bank to respond to those, and then identification of witnesses to testify on subjects covered by that discovery. If this alter ego theory had been presented in a timely fashion, all of that would have been well underway at this point. Now, with less than three months left in discovery, Defendants would have to go back to square one and start anew.

**3. The third claim of the proposed second amended complaint fails as well.**

The third claim of the proposed second amended complaint is for breach of fiduciary duty against Corporex Realty officers William P. Butler and Thomas E. Banta individually. Last month's Kentucky Court of Appeals' decision in *Griffin v. Jones,* 975 F.Supp.2d 711 (W.D.Ky. Sept. 27, 2013), confirmed that Kentucky law does not recognize that claim. All of that has been set out in the motion for reconsideration filed September 8, 2015 (Doc. No. 57). Notwithstanding the settled law in Kentucky, the Bank insists upon bringing forward this claim into its proposed Second Amended Complaint. The claim is baseless and inclusion of it in the Second Amended Complaint should be denied.

The Bank's motion for leave should be denied.

Respectfully submitted,

*/s/ william stuart dornette*
W. Stuart Dornette (*pro hac vice*)
Earl K. Messer (*pro hac vice*)
Robert B. Craig (15590)
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
Phone: (513) 381-2838
Fax: (513) 381-0205
dornette@taftlaw.com
messer@taftlaw.com
craigr@taftlaw.com

Robert L. Rocke (*pro hac vice*)
Raul Valles, Jr. (*pro hac vice*)
ROCKE, MCLEAN & SBAR, P.A.
2309 S. MacDill Avenue
Tampa, FL 33629
Phone: (813) 769-5600
Fax: (813) 769-5601
rrocke@rmslegal.com

*Attorneys for Defendants*

13494288.1

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2015 this document was served upon counsel of record through this Court's CM/ECF system.

Timothy P. Palmer
Buchanan Ingersoll & Rooney PC
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA 15219
timothy.palmer@bipc.com

*/s/ william stuart dornette*

13494288.1